657 P.2d 1169

**Jay D. HERTZ, Petitioner-Appellant and Cross-Appellee,**

v.

**Kathryn W. HERTZ, a/k/a Kathryn Weil, Respondent-Appellee and Cross-Appellant.**

**No. 13837.**

Supreme Court of New Mexico.

Jan. 11, 1983.

Rehearing Denied Jan. 31, 1983.

322

Sutin, Thayer & Browne, Norman Thayer, Ronald Segel, Albuquerque, for petitioner-appellant and cross-appellee.

Conway & Levy and Susan M. Conway, Albuquerque, for respondent-appellee and cross-appellant.

## OPINION

RIORDAN, Justice.

This is an appeal following a division of community property between Petitioner, Jay D. Hertz (husband), and Respondent, Kathryn Weil [Hertz] (wife). Husband appeals and wife cross-appeals. We affirm in part and reverse in part.

The issues on appeal are:

I. Whether the district court erred in determining that the parties had a $49,-357.35 interest in the law firm in which husband was a stockholder and employee.

II. Whether the district court abused its discretion in awarding alimony to wife.

III. Whether the district court erred in its valuation of husband's separate property interest in the community residence.

IV. Whether the district court erred in finding that a $2,000.00 payment by husband to wife prior to the entry of the final judgment constituted child support rather than an advance payment on community property distribution.

V. Whether the district court erred in its valuation of husband's interest in his profit sharing plan.

VI. Whether the district court acted beyond its authority in awarding $3,500.00 to wife for her "costs and expenses".

The issues on cross-appeal are:

VII. Whether the district court erred in failing to award wife any share of the rental value of the parties' community residence occupied by husband *pendente lite.*

VIII. Whether the district court erred in allowing husband to pay wife payments rather than a lump sum amount, thereby denying wife complete and immediate control over her share of the division of the community residence.

IX. Whether wife's $3,500.00 attorney's fees award was so inadequate as to constitute an abuse of discretion.

FACTS

Husband and wife were married in June 1970. One child was born of the marriage. On December 20, 1979, husband petitioned the district court for a dissolution of marriage. On December 31, 1979, the district court entered a divorce decree, reserving the questions of property division, alimony, child support and custody of their child. Eighteen months later, after several hearings, the district court entered a judgment resolving the remaining issues in the case.

I. COMMUNITY INTEREST IN LAW FIRM

The district court found that the parties owned a $49,357.95 community interest in the business (law firm). Each party was awarded one-half. The district court specifically found:

> 13. The value of the business, *including good will,* and including the deferred compensation plan, but not including the profit sharing plan, is $23.81 per share. To be deducted from that is the deferred compensation plan ($3,666) and the $4.28 per share, which the corporation and the shareholders have fixed by agreement as to the value of the shares. The balance is $49,357.95, which is the remainder of the community interest in the business after deducting the [$4.28 per share] of stock and after deducting $3,666 for the deferred compensation plan. To put it another way, the [total] community interest in the business is worth $64,644.15. That is what it is worth to the husband to be where he is and have the relationship and opportunities that he has with the law firm. This is something that is the result of community labor of 8 years. However, the only way that the husband can realize these benefits is to stay with the firm. That restricts his right to practice and makes it less valuable so some adjustments should be made. It would not be fair to require the husband to pay the wife ½ of the $49,357.95 in a lump sum. He should pay her over a period of eight (8) years at ⅛ per year, at the rate of $250 per month with no interest. These payments are to continue only so long as the husband remains with the firm. If he quits, or is discharged, or dies, the obligation is terminated and nothing further is due the wife in connection with this portion of the community property. She will have received her portion in such event. [Emphasis added.]

Husband claims that the $49,357.95 "which is the remainder of the community interest in the business", in fact represents the district court's determination of community goodwill and nothing else, because no other asset or property right exists which was not already considered by the court in valuing and dividing the shares of stock, profit sharing plan, and deferred compensation plan. Husband argues, therefore, that the district court erred in determining that the parties had a $49,357.95 community interest in the law firm, and erred in awarding wife one-half of that amount because the district court disregarded a controlling stock restriction agreement that binds husband as to the valuation of "goodwill", and because the district court's finding that the community owned "goodwill" in the law firm is not supported by substantial evidence.

On the other hand, wife claims that the district court did not determine that the parties had a $49,357.95 "goodwill" interest in the law firm. Wife claims that the dis-

trict court recognized that the tangible assets of the business cannot rationally be measured by the cash basis book value ($4.28 per share) because that measurement omits more than one million dollars of tangible assets, including accounts receivable and work in progress, which was owned by the law firm as a professional corporation on the date of the divorce.

The dispute over the value of the stock results because of the methods used by the experts in calculating the stock. Husband's expert valued the stock on a *cash basis* pursuant to the stock transfer agreement requiring that it be done in that manner. The cash basis *excludes* work in progress and intangible assets such as accounts receivable. Those items are accounted for by the law firm in their deferred compensation fund. Furthermore, "goodwill" is accounted for in this *cash basis* valuation. The testimony is uncontradicted that all previous sales and purchases of the law firm's stock have been on a *cash basis* and that no value is ever attributed to "goodwill" other than the $1.00 amount provided for in the stock subscription agreement.

Wife's expert, on the other hand, valued the stock on an accrual basis, *including* work in progress and accounts receivable, and determined that on an accrual basis, the stock is valued at $17.32 per share. Based upon a capitalization of "excess" earnings, wife's expert then determined that there was a value of $6.49 per share in "goodwill".

The district court did not specify the components of its valuation of the parties' $49,-357.95 interest in the law firm, nor did the district court explain why the husband's payments to wife on the $49,357.95 amount were to continue only so long as the husband remains with the law firm. However, in arriving at this total, the district court apparently accepted the testimony of wife's expert. Wife's expert testified that the value of the law firm's stock was $17.32 per share, plus $6.49 for "goodwill" per share for a total of $23.81 per share, on an *accrual* valuation basis. The district court then valued the community interest in the law firm

as $64,644.15, by multiplying $23.81 per share by the 2,175 shares owned by husband. This $64,644.15 included "goodwill" and the husband's interest in the deferred compensation plan but did not include the profit sharing plan. The district court then deducted husband's $3,666.00 interest in the deferred compensation plan and $11,620.20 (the fixed value of the 2,175 shares as per the Stock Restriction Agreement). Consequently, the district court arrived at its $49,357.95 total. This finding, however, conflicts with Finding # 8 in which the district court determined that "the fair value of the stock on the divorce date was $4.28 per share", or a total of $11,620.20. Finding # 8 was apparently based upon the testimony of husband's expert who valued the stock on a cash basis.

"Professional goodwill" is basically defined as the difference between the total value of the professional association or corporation and the aggregate value of its separable resources and property rights, less liabilities. *Levy v. Levy,* 164 N.J.Super. 542, 397 A.2d 374 (1978); G. Catlett & N. Olson, Accounting for Goodwill (Accounting Research Study No. 10, 1968); Financial Accounting Standards, Opinions 16 and 17 (Financial Accounting Standards Board 1981); *compare Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980) *with Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (Ct.App.1981).

In *Hurley v. Hurley, supra,* we first addressed the issue of *professional* goodwill and recognized that in some circumstances it may exist. However, the facts in the *Hurley* case were significantly different from those presented in this case. Hurley was a physician in a professional corporation with one other physician. There was no stock subscription agreement which valued "goodwill". The *Hurley* case held that the trial court erred in finding that there was no goodwill in the two-person professional medical corporation that was initially founded by Dr. Hurley. In this case, we consider whether the district court erroneously disregarded the stock restriction agreement *which included* the employer's

goodwill among the assets represented by the stock valuation. Furthermore, this case deals with a *legal* professional association of over fifty persons that had been in existence for thirteen years before husband became employed with the firm, and for 17 years before husband became a shareholder in the firm.

■ In *Hurley,* we approved the *capitalization of excess earnings method* to determine a value for professional goodwill when it existed. However, we clearly stated that this method was not exclusive. We listed as factors to be considered when determining professional goodwill:

> [T]he length of time the professional has been practicing, his comparative success, his age and health, and any past profits of the practice. Attention should also be given to the physical and fixed resources of the practice.

*Id.* at 644, 615 P.2d at 259. However, this list of factors is similarly *not* exclusive because each case must be determined on its own particular facts and circumstances. *Id.* While we recognized the difficulty in ascertaining the existence and specific amount of professional goodwill, we clearly held that, "[o]nce its existence and value are established, it should be included in and divided along with other community property." *Id.*

■ The record in the present case clearly indicates that throughout the existence of the law firm, each of the over 150 purchases and sales of its stock was consummated by a valuation based upon a cash accrual basis with no amount paid or reduced for goodwill as provided by the law firm's stock restriction agreement, to which all of the law firm's shareholders were parties. The stock restriction agreement specifically states:

> *Goodwill,* leases, contract rights and the like *will be valued in the aggregate at $1.00,* unless a different figure has been consistently shown on the Corporation books. [Emphasis added.]

Therefore, there is no doubt that the law firm not only recognized the existence of goodwill but also clearly established by contract that the value of goodwill and other intangible assets would be $1.00. There is no reason to suspect that the law firm was attempting to frustrate the purpose of any community property principle by establishing an intangible asset's amount at $1.00 because every purchase and sale of its stock was subject to this agreement regardless of the circumstances surrounding the purchase or sale. Therefore, this $1.00 amount alone should have been used by the district court in determining the community's interest in the goodwill of the law firm.

■ We hold that a non-shareholder spouse is bound to the same terms of a shareholder valuation agreement which affects the shareholder spouse. This insures that the nonshareholder spouse does not receive a *greater* value than that of the shareholder. Each spouse has an undivided interest in their community property, which the trial court has a duty to divide equitably. *See* § 40–3–8, N.M.S.A.1978; *see also Lucas v. Lucas,* 95 N.M. 283, 621 P.2d 500 (1981). This principle was ignored when wife was awarded an interest including goodwill greatly in excess of husband's contractual withdrawal rights. If, for example in this case, husband terminated his employment with the law firm, he could never realize the value of the goodwill that was awarded to wife. Value of goodwill must be determined without dependence upon the professional spouse's potential or continuing income. *Hurley v. Hurley, supra.*

In deciding this issue of professional goodwill, we find ourselves in agreement with the following statement made by the Wisconsin Court of Appeals:

> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.

*Holbrook v. Holbrook, supra,* 309 N.W.2d at 355 (footnote omitted).

To the extent that the district court was attempting to award an interest in the law firm beyond that enjoyed by the husband, it erred. We know of no other interest the parties could own that was not divided.

■ We therefore find that the district court erred, and we hold that if the professional spouse's stock in the corporation is subject to restrictive stock agreements and if the value of goodwill is fixed by those shareholder agreements, then absent evidence that the stockholders have disregarded this amount, the district court cannot determine a "goodwill" value above that amount. *See Holbrook v. Holbrook, supra; cf. Lucas v. Lucas, supra.*

## II. ALIMONY

The district court found that wife "is in need of alimony in order to support herself in a style reasonably comparable to that enjoyed by the parties during the marriage and to afford herself an opportunity to achieve an earning capacity reasonably comparable to that of [husband]." The district court awarded alimony of "$650 per month beginning March 1, 1981 for one year; $700 per month beginning March 1, 1982 for one year; $750 per month beginning March 1, 1983 for one year; $300 per month beginning March 1, 1984 for two years; $1 per year beginning March 1, 1986." This award totals over $32,400.00. Husband argues that the district court abused its discretion in awarding alimony to wife. We agree.

■ We assume, but do not decide, that husband, who was a thirty-one year old attorney shareholder in a law firm, was able to comply with the award. We recognize that it is well-established that it is within the sound discretion of the district court to determine whether to award alimony and that an alimony award will be altered only upon a showing of an abuse of discretion. *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981). Factors to be considered by a district court in determin-

ing whether an alimony award is just and proper pursuant to Section 40–4–7(B)(1), N.M.S.A.1978, include the duration of the marriage, the wife's needs, her age, her health, the means she has available to support herself, the husband's earning capacity, and the amount of property owned by each of the parties. *Ellsworth v. Ellsworth, supra.* The record clearly indicates that at the time of the divorce, wife was twenty-nine years old, in good health, and had earned a Bachelor of Arts Degree in psychology, a Masters Degree in guidance and counseling, and had taken several courses towards a Doctorate Degree. Wife also had a New Mexico teaching certificate, and was a tenured employee with the Albuquerque Public Schools as a counselor, earning approximately $14,444.00 annually. Had wife continued with her employment, she would have earned at least $16,000.00 for the 1980–81 academic year. Instead, *after the divorce was granted* but before the property division, wife chose to quit her job to pursue her Doctorate Degree. The record also indicates that wife was awarded in excess of $65,200.00 in community property *excluding* the community's goodwill interest in the law firm.

We hold that the district court erred in determining that wife was entitled to alimony "in order to afford herself an opportunity to achieve an earning capacity reasonably comparable to that of [husband]." In addition, the district court's finding that wife is in need of alimony "in order to support herself in a style reasonably comparable to that enjoyed by the parties during the marriage", is similarly erroneous. These are not factors upon which alimony is determined. We therefore hold that the district court abused its discretion in its award of alimony. The record clearly shows that wife was neither in need nor entitled to alimony on the date of the divorce when we consider the appropriate factors.

## III. THE COMMUNITY RESIDENCE

■ The district court determined that husband had a separate property lien of

$9,600.00 in the community residence ($6,000.00 down payment plus proportionate appreciation). Husband argues that the district court erroneously undervalued his separate property, which is actually $15,-000.00. We agree.

There is substantial evidence in the record to support the district court's finding that husband was able to trace his separate property to the $6,000.00 purchase price of the land on which the parties' community residence was later built. However, the uncontradicted evidence presented at trial is that the land value is now $15,000.00. There is no evidence to support the district court's determination of another amount, and the district court did not explain in its finding how it reached a different value. A finding not supported by substantial evidence may not be sustained on appeal. *Cruttenden v. Mantura,* 97 N.M. 432, 640 P.2d 932 (1982); *Getz v. Equitable Life Assur. Soc. of U.S.,* 90 N.M. 195, 561 P.2d 468, *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Therefore, we determine that husband is entitled to the $15,-000.00 value of his separate property interest in the land, which is uncontradicted in the record. .

## IV. ADVANCE PAYMENT

The district court found that "[g]iven the financial circumstances of the parties and the needs of [wife] and the child between the entry of the final decree and the last day of the trial, the total moneys paid to [wife] by [husband] during that period equal a reasonable amount of child and spousal support for that period." Husband argues on appeal, that the district court should have found that $2,000.00 of the money paid by him prior to the entry of the final judgment constituted an advance on the parties' division of their community property.

The record shows that during the course of litigation, husband requested the postponement of several hearings, including the hearing on the merits which was scheduled for July 9 and 10, 1980. On July 3, 1980, at the hearing on husband's motion for continuance, husband's counsel advised the district court that husband was willing and prepared to pay $2,000.00 as an advance on the community property division to wife so that she would not be prejudiced by the delay. The record also clearly indicates that the district court stated to both husband's and wife's attorneys, its intention to reserve a determination as to how to account for the advance until after the final hearing, when the amount of interim support which husband was paying to wife would be disclosed to the district court. The district court later determined that this money should be treated as interim support, apparently feeling that the previously agreed amount was inadequate. Therefore, because we similarly find no abuse of discretion by the district court in determining that the $2,000.00 constituted child support and was not an advance on community property, we affirm the district court on this point. *See Creusere v. Creusere,* 98 N.M. 788, 653 P.2d 164 (1982); *First National Bank of Santa Fe v. Wood,* 86 N.M. 165, 521 P.2d 127 (1974).

## V. PROFIT SHARING PLAN

The district court found that on the date of divorce the parties had a community interest in the profit sharing plan maintained by husband's law firm valued at "83/92 of .0445 of $121,880.40", $4,893.11. The district court then awarded wife one-half of that amount, $2,446.55. Husband argues that the district court erroneously overvalued both the profit sharing plan and his interest in the plan. We agree.

In order to determine whether the district court erred in its valuation we must initially determine the value of the plan itself, and then determine the question of husband's vested interest in the plan.

Husband claims that on the date of the divorce the value of the plan was $61,880.70 and that the district court's figure of $121,-880.40 is simply without support in the rec-

ord. The plan itself provides for a yearly valuation of the trust assets on June 30, the "last day of the company's taxable year." At trial, the law firm's administrator testified that the value of the profit sharing plan, as of the date of the divorce, was $61,880.40 as determined on June 30, 1979, and would remain constant until June 30, 1980, when the trust would be revalued for the following year. The administrator further testified that the law firm's board of directors authorized $5,000.00 per month to be allocated for inclusion in the profit sharing plan. As a result, an additional $30,000.00 contribution to the plan accrued from the valuation date of June 30, 1979, to the date of the divorce on December 31, 1979. However, despite the accrual of this additional $30,000.00 contribution to the plan, no participant in the plan, including husband, had any interest in that amount before the next valuation date of June 30, 1980, because the plan specifically provided that:

> [A]ll contributions to the Trust will be considered for Trust accounting purposes as having been made on the Valuation Date coincident with or next following the last day of the Company's taxable year for which the contribution is made, regardless of when actually made.

Therefore, husband argues, even though this additional $30,000.00 had accrued, the community's interest in the profit sharing plan remained a proportional share of $61,880.40.

Husband also claims that the district court failed to account for the fact that his interest in the profit sharing plan was only 75% vested. Husband claims that based on a valuation of $61,880.40, his total account balance was $2,177.13. His 75% vested interest in that account on the date of the divorce was $1,632.85. Therefore, he claims that wife's one-half interest in his profit sharing plan was $816.43, and not $2,446.55 as the district court found.

Wife argues that the district court's valuation of the parties' interest in husband's profit sharing plan is amply supported by evidence. Wife claims that the district court took the $61,880.40 that was in the account on June 30, 1979, and then added $5,000.00 for each month in fiscal year 1979–80 as the firm's board of directors previously had directed, in order to arrive at its total of $121,880.40 as of June 30, 1980. Wife further argues that it would have been unfair to cut off the community interest in the plan on June 30, 1979, because the community had earned a portion of the next six months' profits of the law firm. Wife claims that the multiplier of 83/92 represents the ratio of months in the marriage to months in the plan and that the multiplier of .0445 represents husband's percentage of ownership in the law firm, which the district court then used to determine how much of the money in the plan belonged to the community. Therefore, wife claims that the district court started with the total amount of money in the plan, then took husband's share using the ratio of his ownership interest, and found the community interest by taking the percentage of this amount earned during the marriage.

In *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980), we held that in order to determine a community interest in a profit sharing plan, a district court may use an undiscounted, current actual value on the date of the divorce, if the present value of the plan cannot be ascertained by substantial evidence. We feel that it is the district court's duty to try to determine a reasonable value of the community interest in a profit sharing plan. Moreover, although the district court is not necessarily bound to use the same manner of valuation that the directors of the plan may use, it was clearly an abuse of discretion to value the plan six months after the community was dissolved.

The correct approach in this case is to value the community interest in the profit sharing plan as of the date of the divorce. The evidence is uncontradicted that the value of the law firm's profit sharing plan was $61,880.40 as of June 30, 1979, and that the directors of the law firm had authorized the

inclusion of $5,000.00 per month in the plan. As a result, an additional $30,000.00 should be added to the profit sharing plan to calculate the parties' 3.518% interest in the plan.[1] The correct valuation in the plan is one-half of husband's (75%) vested interest of the percentage owned (3.518%) of the reasonable value of the plan ($91,880.40) on the date of the divorce, December 31, 1979. Therefore, we find that the district court erred in its valuation of husband's interest in the law firm's profit sharing plan.

## VI. COSTS AND EXPENSES

The district court found:

12. The sum of $3,500 (including gross receipt tax) as an attorney fee award and $3,500 for other costs and expenses is necessary and reasonably adequate to assure that the wife was able to obtain representation, and is reasonably necessary and adequate to pay for the portion of her representation which was required due to what was an unreasonable stance of the husband on disputed issues, i.e., value of the business and alimony.

 The district court then concluded that the second $3,500.00 would "be applied to [wife's] costs and expenses in preparation for trial." Husband claims that the district court's decision provides no specific identification of the costs and expenses, in addition to wife's attorney's fees, that he is being required to pay. Husband, therefore, argues that the district court exceeded its authority in making this vaguely defined award of costs and expenses. We agree.

We recognize that the district court's discretion to determine an award of attorney's fees must be exercised to insure efficient preparation and presentation of a case. *Spingola v. Spingola,* 93 N.M. 598, 603 P.2d 708 (1979); *Burnside v. Burnside,* 85 N.M. 517, 514 P.2d 36 (1973). Nevertheless, in this case, neither the findings nor the rec-

ord is clear as to what the "other costs and expenses" were. If a finding is properly attacked and is not supported by substantial evidence, then that finding cannot be sustained on appeal. *Cruttenden v. Mantura, supra; Getz v. Equitable Life Assur. Soc. of U.S., supra.* The district court must be more specific in its findings so that on review we may determine (1) whether there was proper evidence to support the award of $3,500.00 for other costs and expenses, (2) whether such costs were within statutory limits for expert witnesses, and (3) whether the district court abused its discretion in awarding such costs. Therefore, we reverse the district court's finding because of lack of specificity and because it is not supported by substantial evidence.

## CROSS–APPEAL

## VII. RENTAL VALUE

 Wife argues that the district court erred in failing to assess any interest or rental value against husband in the district court's division and award of the Corrales residence because husband had control of and lived in the community residence during the eighteen months between the date of the divorce and the entry of the judgment. We agree.

The parties were divorced on December 31, 1979. The district court, however, did not issue its final judgment dividing the community assets until June 26, 1981. The district court did not order husband to pay any amount to wife for a return on her interest in the property.

Husband asserts that we should be bound by *Williams v. Sinclair Refining Co.,* 39 N.M. 388, 47 P.2d 910 (1935), because wife presented no evidence of ouster by husband. In *Williams v. Sinclair Refining Co., supra* at 392, 47 P.2d at 912 (quoting *Hamby v. Wall,* 48 Ark. 135, 2 S.W. 705, 706 (1887)), we stated:

[I]t is a well-settled principle of the common law that the mere occupation by a

---

1. Husband's interest in the plan differs from his interest in the professional corporation because all law firm employees are eligible to be includ-

ed in the profit sharing plan, not merely the stockholders.

tenant of the entire estate does not render him liable to his co-tenant for the use and occupation of any part of the common property. The reason is easily found. The right of each to occupy the premises is one of the incidents of a tenancy in common. Neither tenant can lawfully exclude the other. The occupation of one, so long as he does not exclude the other, is but the exercise of a legal right. *If, for any reason, one does not choose to assert the right of common enjoyment, the other is not obliged to stay out; and if the sole occupation of one could render him liable therefor to the other, his legal right to the occupation would be dependent upon the caprice or indolence of his co-tenant, and this the law would not tolerate.* (Citations omitted.) [Emphasis added.]

While we continue to recognize this principle, we nevertheless find that if one of the parties in a divorce case remains in possession of the community residence between the date of the divorce and the date of the final judgment dividing the community assets, then there *may* be a form of constructive ouster, exclusion, or an equivalent act which is created as to the right of common enjoyment by the divorced spouse not in possession. See § 42–4–8, N.M.S.A.1978. This exclusion may render the divorced spouse in possession of the community residence liable to the divorced spouse not in possession for the use and occupation of the residence between the date of the divorce and the date of the final judgment. See § 42–4–9, N.M.S.A.1978. To hold otherwise would mean that both divorced spouses should have continued to live with each other during the eighteen month interim or that both should have abandoned the property. It would also mean that wife may be deprived of a fair return on her community interest in the property. Therefore, on remand the district court shall determine if there was a constructive ouster or exclusion, and if so, the district court shall determine a fair return to wife for her one-half interest in the residence, considering the fair rental value of the property for the time between the divorce and the award of her interest in the property, as well as the payments made and the husband's separate property lien against the property.

## VIII. IMMEDIATE CONTROL OVER COMMUNITY RESIDENCE

 The district court also found that husband was indebted to wife for her share in the community's interest in the Corrales residence in the amount of $27,-194.00 and that husband was to pay wife for her share in the residence "at the rate of $200 per month, including interest, commencing March 1, 1984; to be increased to $500 per month, including interest, commencing March 1, 1986, and continuing thereafter until paid in full." Wife argues that the district court erred in denying her "complete and immediate control" over her share of the residence because it did not require husband to pay her in full and because it unnecessarily extended husband's indebtedness to her for a period of at least ten years. We agree.

A district court is under a duty to ease the transition of the parties after a divorce. *Cunningham v. Cunningham,* 96 N.M. 529, 632 P.2d 1167 (1981). One method of easing this transition is by granting each spouse "complete and immediate control" over his or her share of their community property. *Id.; cf. Ridgway v. Ridgway, supra.* The record clearly indicates that the residence had substantial equity and that husband did not request a long term installment plan of deferred payments for the residence. There was also no showing that husband was unable to make arrangements to pay wife her share of the equity in the house. We determine, therefore, that the district court abused its discretion in this case in refusing to provide that wife would receive "complete and immediate control" of her interest in the community property. On remand, the district court shall make provision for the payment of the full amount due to wife.

## IX. ATTORNEY'S FEES

The district court concluded that wife "should be awarded $3,500, including tax, from [husband], to be applied to her lawyer fees". On cross-appeal, wife argues that the attorney's fees awarded by the district court were so inadequate as to constitute an abuse of discretion. We disagree.

It is well-settled that an award of attorney's fees "on the basis of reasonable compensation is a finding *not to be disturbed unless patently erroneous as reflecting an abuse of discretion.* [Emphasis added.]" *Michelson v. Michelson,* 89 N.M. 282, 289, 551 P.2d 638, 645 (1976) (quoting *Elsea v. Broome Furniture Co.,* 47 N.M. 356, 376, 143 P.2d 572, 584 (1943)). The record indicates that both parties incurred substantial expenses in the preparation, trial and appeal of this case. After a review of the record, we find no persuasive evidence in the record which the district court so clearly abused in its discretion when fixing the amount of attorney's fees that would justify disturbing the award. Therefore, this attorney's fees award will not be disturbed.

## CONCLUSION

This case is remanded to the district court for further proceedings not inconsistent with this opinion.

Finally, both parties shall bear their own costs on appeal.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.