719 P.2d 432

**Josephine MITCHELL,
Petitioner-Appellee,
Cross-Appellant,**

v.

**Robert L. MITCHELL,
Respondent-Appellant,
Cross-Appellee.**

No. 8264.

Court of Appeals of New Mexico.

March 18, 1986.

Certiorari Denied April 23, 1986.

Edward L. Yudin, Michael E. Kushner, Michael E. Kushner, P.A., Albuquerque, for petitioner-appellee cross-appellant.

Roberta Beyer, Albuquerque, for respondent-appellant cross-appellee.

## OPINION

ALARID, Judge.

In this cause, a motion for rehearing having been filed by appellant, and consideration having been had by all of the members of the original panel,

IT IS ORDERED that the motion for rehearing be DENIED.

Further, on the court's own motion, IT IS ORDERED that the original opinion issued in this cause is withdrawn and the following substituted therefor.

Mr. Robert K. Mitchell (husband) (respondent-appellant and cross-appellee) appeals the trial court's judgment dividing the property of the parties upon divorce. Mrs. Josephine Mitchell (wife) (petitioner-appellee and cross-appellant) filed a cross-appeal also alleging the trial court erred in the property division. The trial court entered a decree of dissolution of marriage on March 29, 1983, but retained jurisdiction to determine the issues of property division and debt allocation. On December 17, 1984, the trial court entered a final judgment incident to a final decree of divorce and filed findings of fact and conclusions of law.

On appeal, husband raises the following issues:

I. Whether the trial court erred in characterizing husband's C.P.A. practice as community property.

II. Whether the trial court erred in characterizing the intangible assets of husband's C.P.A. practice as goodwill which is community property divisible on divorce.

III. Whether the trial court erred in characterizing the A.G. Edwards stock account as community property.

IV. Whether the trial court erred in refusing to direct the community to reimburse husband for his pre-marriage monies spent during the marriage for the benefit of the community.

V. Whether the trial court erred in failing to hold that $30,000 of alimony paid to wife from the date of divorce to the date of final judgment was an advance against her share of the community property.

Wife raises the following issues on cross-appeal:

VI. Whether the trial court erred in holding that husband was entitled to reimbursement for certain post-divorce expenditures made from community assets.

VII. Whether the trial court erred in holding that the community was not entitled to any monies generated by husband's C.P.A. practice after the date of the divorce.

VIII. Whether the trial court erred in determining that there was no evidence that husband transmuted his interest in the Justin property from separate to community property.

IX. Whether the trial court erred in valuing the community residence at $195,000.

X. Whether this court has jurisdiction to consider husband's appeal on Issue I because it was not timely.

For the reasons discussed below, we affirm the trial court on all issues raised in the appeal and cross-appeal.

We initially address a jurisdictional issue raised by wife contending that husband's appeal was not timely. Husband filed a motion to bifurcate the trial to litigate the issue of whether the C.P.A. practice was community property or his sole and separate property. The issue was tried on July 11, 1983. The trial court, by letter dated September 14, 1983, informed the parties that the C.P.A. business would be characterized as a community asset.

■ Wife contends that the trial court's letter was a final and appealable order because it fully disposed of a matter which required adjudication. NMSA 1978, Civ.P. Rule 54(c)(1) (Cum.Supp.1985) provides that:

[W]hen more than one claim for relief is presented in an action ... the court may enter a final judgment as to one or more

but fewer than all of the claims only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, which adjudicates fewer than all the claims shall not terminate the action as to any of the claims and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

Civ.P. Rule 54(b) was renumbered effective October 1, 1984, to Civ.P. Rule 54(c). No other changes were made in part (c). The jurisdiction of the court of appeals is limited to appeals from final judgments, interlocutory orders which practically dispose of the merits of an action and final orders after entry of a judgment which affect substantial rights. *Thornton v. Gamble,* 101 N.M. 764, 688 P.2d 1268 (Ct.App.1984); N.M.Const. art. VI, § 29; NMSA 1978, § 39-3-2.

■ The trial court's letter of September 14, 1983, lacks the language required by Civ.P. Rule 54(c)(1) and adjudicates only one of the issues raised by the parties. If husband had tried to take an appeal from this letter, his appeal would have been dismissed for lack of a final order. *See Thornton v. Gamble.* The court's determination that the C.P.A. practice was community property became final when the final judgment was entered on December 17, 1984. Husband timely appealed from that judgment. This court has jurisdiction to consider Issue I.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN CHARACTERIZING HUSBAND'S C.P.A. PRACTICE AS COMMUNITY PROPERTY.

■ Husband assumes that his C.P.A. practice was established (and therefore acquired) prior to marriage. He then contends that the community has no interest or lien on the C.P.A. practice because the community was adequately compensated for the value of his labor. The trial court found that the "business as it existed on

the date of marriage was negligible with an insignificant amount of capital investment and capital value." The court further stated that the business was closer to the beginnings of a professional association than to a capital-intensive business and that it has existed and grown since the marriage through the labor of husband, whose earning power was community property. The court held that the business was community property. The issue, therefore, is whether the trial court erred in so concluding.

Husband became a C.P.A. in Ohio. He moved to Albuquerque in September 1969. He held full-time jobs in Albuquerque, as follows:

| | |
|---|---|
| Elmer Fox & Co., Tax Manager | October 1969–October 1970 |
| Rio Rancho Estates, Assistant Comptroller | January 1971–April 1971 |
| Industrial Concepts Corp., Comptroller | April 1971–September 1972 |
| Felco Jewelry Industries, Comptroller and Treasurer | September 1972–April 1973 |

The parties were married on September 3, 1971. Husband testified that he had three clients in 1970. He had no records from 1970. He estimated that at the time the parties were married he had between fifteen and twenty clients but did not have a list of names. His business letterhead in January 1971 showed that he was operating out of his residence on Justin Drive. His gross receipts tax returns for March and April 1971 show receipts of $310 and $365. At the date of marriage, his C.P.A. practice owned a couch, a calculator and small office equipment. Husband ceased to be an employee, opened an office outside of his home, and engaged full-time in his C.P.A. practice in October 1973. In 1971, his C.P.A. activities generated gross income for federal income tax purposes of $985. His federal income tax returns for 1972 and 1973 show gross income from the C.P.A. practice of $1,650 and $7,568.85. By 1982, the business reported gross receipts of $153,968.

Husband contends that the evidence was uncontroverted that his interest in his accounting practice was acquired prior to marriage. The evidence supports the trial court's finding that the business, as it existed on the date of marriage, was negligible. The value of the C.P.A. business derived almost entirely from the efforts of husband during the marriage. It was, therefore, community property.

Husband's appellate argument mischaracterizes the issue on appeal. Although the individual right to practice a profession is a property right that cannot be classed as a community property, the value of the practice as a business at the time of dissolution of the community is community property. *See Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980), *overruled on other grounds*, 97 N.M. 133, 637 P.2d 564 (1981). On these facts, the question for the trial court was whether any portion of the professional practice assets were attributable to the husband's separate property investment. *See In re Marriage of Lopez*, 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974). The trial court's findings and conclusions indicate that husband did not establish at trial a separate property interest to which it was error not to apportion any return. *Cf. Gillespie v. Gillespie*, 84 N.M. 618, 506 P.2d 775 (1973) (husband had been a partner in a title business prior to marriage, in which he had made a capital investment). Under these circumstances, the trial court did not err in ruling that the practice was community property. Because husband's investment prior to marriage was negligible, the trial court properly concluded that the community property was entitled to all of the profits and increase. *See id.; cf. Hodges v. Hodges*, 101 N.M. 67, 678 P.2d 695 (1984) (party asserting that property acquired during marriage is separate must rebut presumption of community property).

It is not possible to lay down hard and fast guidelines in apportioning assets of a separate business between that which belongs to one partner as separate property and that which belongs to the community. *Gillespie v. Gillespie*. A proper apportionment depends on the proof. *Id.* In this case, there was evidence from which the trial court could conclude that the primary value of the practice was derived from

husband's efforts after marriage. *See In re Marriage of Lopez.* The approach urged by husband gave the worth of any separate property used in his professional practice an exaggerated importance. *See id.* We hold that the trial court did not err in ruling that the practice was community rather than separate, because husband did not establish a separate property interest to which fairness required any apportionment.

■ Husband argues that wife failed to prove by clear and convincing evidence that his interest in the business was transmuted into community property. Because the trial court was correct in holding that the property was community property, wife was not required to show transmutation.

Husband further contends that the community has no interest in the accounting practice because he withdrew sufficient monies to provide a comfortable lifestyle for the parties throughout the marriage. In view of our holding that the trial court correctly ruled husband had not established any separate property investment, the trial court was not required to apportion the earnings of the business between separate and community property. *Cf. Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976); *Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939). In these cases, the spouse claiming a separate property interest in a business to which he had contributed labor, skill and industry proved a significant capital investment prior to marriage. In neither of these cases, further, was the business a professional practice. *See generally In re Marriage of Lopez.*

The trial court did not err in holding that the husband's C.P.A. practice was community property.

## II. WHETHER THE TRIAL COURT ERRED IN CHARACTERIZING THE INTANGIBLE ASSETS OF HUSBAND'S C.P.A. PRACTICE AS GOODWILL WHICH IS COMMUNITY PROPERTY DIVISIBLE ON DIVORCE.

Husband contends that the trial court erred in designating the intangible assets of his C.P.A. business as goodwill rather than as a covenant not to compete and characterizing it as community property. The trial court listed this value as $153,968. The parties are not arguing over the value of the various other assets which made up the total value of the C.P.A. business. As noted in H. Sellin, *Attorney's Handbook of Accounting* § 2.15 (3rd ed. 1985), "Intangibles are assets which have no physical existence such as we find in fixed assets. They do, however, possess certain rights, privileges, or competitive advantages which may have substantial value. Examples of intangible assets are goodwill, trademarks, patents, secret formulas and processes, etc." *See also First State Bank v. Mountainair v. State Tax Commissioner,* 40 N.M. 319, 59 P.2d 667 (1936).

■ In *Hurley,* the supreme court stated that goodwill can and does exist in a professional practice even though founded on the personal skill and reputation of an individual, and that once the existence and value of goodwill have been established, it should be included and divided along with other community property. In New Mexico, "professional goodwill" has been defined as the difference between the total value of the professional association or corporation and the aggregate value of its separable resources and property rights, less liabilities. *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983). When goodwill exists, the court has approved the capitalization of excess earnings method to determine its value. However, it is not considered an exclusive method. *Id.* Factors to be considered when determining professional goodwill include the length of time the professional has been practicing, his comparative success, his age and health, physical and fixed resources of the practice, and past profits of the practice. *Id.* Even though the goodwill may not be a salable asset, it can have value and should not be ignored. Kelsey & Montoya, *Domestic Relations,* 12 N.M.L.Rev. 325 (1982).

■ Husband contends that the intangible assets of the C.P.A. business should have been characterized as a covenant not to compete. He relies on *Lucas v. Lucas*, 95 N.M. 283, 621 P.2d 500 (1980), for the proposition that a covenant not to compete is separate property. In that case, the supreme court held that the proceeds of a covenant not to compete, negotiated as part of the sale of a business, was separate property. The husband was a licensed mortician. The stock in the Ballard Funeral Home, operated by the husband, was held to be community property. When the stock was sold, its value did not include a covenant not to compete which was negotiated contemporaneously with the sale of the stock. The price paid for the stock was fair and reasonable and exceeded the value of the total assets of the corporation. The court therefore stated that goodwill had been included in the value of the stock. The sale of stock and the execution of the covenant not to compete were not consummated until after the divorce decree had been entered. On the facts of the case, the covenant not to compete could not be equated with goodwill. *Lucas* is not authority for valuing the intangible assets of husband's C.P.A. practice.

Wife's expert witness, Fred Comstock, was a C.P.A. with more than thirty years of experience. He testified that he prepared a report evaluating Mitchell & Co., husband's C.P.A. practice. He placed a total value on the C.P.A. practice as of January 31, 1983, of $311,160. This figure was arrived at by adding the $151,498 value of the hard assets (such as cash, furniture and fixtures, and accounts receivable) to the "accounting practice valuation" of $192,460 and subtracting the liabilities of $32,754. He stated that the person on the street would consider "accounting practice valuation" the same as goodwill. He explained that because husband's business was not for sale and had not been evaluated for purposes of sale, a covenant not to compete was irrelevant. In determining the value of the goodwill in this business, he believed that husband had a very profitable business for the year ending January 31, 1983, because he had a total gross income of $186,802, compared to his net adjusted income of $89,865. He testified that practices will be valued at between 50% and 200% of the preceding year's gross fees depending on several factors including how profitable the business was, the type of clients and the type of work done. As husband's business was very profitable, Mr. Comstock used a capitalization factor of 125% applied to the fees received for the year ending January 31, 1983, of $153,968 to arrive at a value for the goodwill of $192,460. The court apparently used a factor of 100% as it valued goodwill at $153,968.

The trial court should be affirmed as to this issue. In *Hurley v. Hurley, Lucas v. Lucas* and *Hertz v. Hertz*, the value of the business in excess of the hard assets was recognized to be goodwill which is community property divisible upon divorce. The fact that in *Lucas v. Lucas* there was also a covenant not to compete did not affect the existence of goodwill, although it may have affected the valuation of the goodwill. A covenant not to compete and goodwill are similar in that both are assets of a business, the value of which is arrived at by negotiations between buyer and seller when a business is sold. Both are then carried on the books and may be depreciated. Unlike goodwill, however, a covenant not to compete is not valued until a business is sold. Goodwill is often valued for purposes other than sale of a business, for example, for applying for a loan or, as in this case, for purposes of division of property upon divorce.

■ A covenant not to compete should be viewed as an asset which is part of the value of a business only when such a covenant is negotiated and received by the business. *See Lucas v. Lucas.* When a buyer insists on a noncompetition agreement, he or she is seeking to preserve the goodwill. *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (Ct.App.1985). *See also Lord v. Lord*, 454 A.2d 830 (Me.1983). In cases such as this one, a hypothetical covenant not to compete should not be valued on divorce but should

be viewed as a possible means to protect the value of the business' goodwill. The trial court did not err in designating the intangible assets of the C.P.A. practice as goodwill and in characterizing it as community property.

## III. WHETHER THE TRIAL COURT ERRED IN CHARACTERIZING THE A.G. EDWARDS STOCK ACCOUNT AS COMMUNITY PROPERTY.

Husband contends that the trial court erred in characterizing the A.G. Edwards stock account as community property. He owned stock prior to marriage. He contends that because the community bought and sold stock throughout the marriage and because the overall sales proceeds and dividends exceeded the price of the stock purchased throughout marriage, the entire stock account should be separate property. He does not contest the trial court's valuation of the stock account at $51,000.

During the years the parties were married, the dividend income and proceeds from the sale of stock exceeded the purchase prices of stock by $56,488.42. Counsel for husband admitted that monies could not be traced specifically to each stock. Husband does not contend that the dividends received on the stock he owned prior to marriage, or the proceeds of sale of this stock, was re-invested in the stock account. The trial court would not admit husband's exhibit EEE which reconstructed the stock sales, purchases, and dividends from the tax returns on a yearly basis. The court held that the stock account was so commingled that it was community property.

There is a presumption that property acquired during marriage is community property. NMSA 1978, § 40–3–12 (Repl.Pamp.1983). This presumption may be rebutted by a preponderance of the evidence. *Stroshine v. Stroshine*, 98 N.M. 742, 652 P.2d 1193 (1982). If separate property has been so intermingled with community property that it cannot be traced or identified, the evidence of separate status is insufficient to overcome the presumption of community property. *Nichols v. Nichols*, 98 N.M. 322, 648 P.2d 780 (1982); *Corley v. Corley*, 92 N.M. 716, 594 P.2d 1172 (1979); *Burlingham v. Burlingham*, 72 N.M. 433, 384 P.2d 699 (1963).

Husband relies on *Corley v. Corley* and *Leckie v. Leckie*, 101 N.M. 254, 680 P.2d 635 (Ct.App.1984), for the proposition that where community expenditures exceeded community income, then any commingling of funds was to the benefit of the community and any funds remaining are separate property of one spouse. Both of those cases dealt with bank accounts in which both community and separate income were placed and from which both community and separate debts were paid.

The funds going into and out of the stock account were not specifically traceable to separate or community funds or expenditures as they were in *Corley* and *Leckie*. The trial court did not err in holding that separate funds in the stock account had been so commingled with community property that they could not be traced. Therefore, the presumption that it was community property applied. *Cf. Nichols*. Husband did not overcome this presumption.

## IV. WHETHER THE TRIAL COURT ERRED IN REFUSING TO DIRECT THE COMMUNITY TO REIMBURSE HUSBAND FOR HIS SEPARATE FUNDS SPENT DURING THE MARRIAGE FOR THE BENEFIT OF THE COMMUNITY.

Husband contends that the trial court erred in refusing to direct the community to reimburse him for monies he owned prior to marriage which were spent during the marriage for the community benefit. These monies included $6,000 from the sale of his C.P.A. practice in Ohio; $16,647 from the sale of his separate real estate; $2,542 cash; $500 from the sale of his automobile; and $6,252 from an inheritance. He requested findings that this $31,941 was made available to the community, and was not transmuted into community property.

The trial court rejected these findings and concluded that these separate assets had been so commingled with community assets after the marriage that they lost their separate character and were impossible to trace.

Husband also contends that if this court affirms the trial court's holding that the stock proceeds were commingled, he should be reimbursed an additional $17,019 for the stock he owned on the date of marriage. He testified that he owned 400 shares of General Tire and 100 shares of Bethlehem Steel prior to marriage. The General Tire stock sold in 1977 for $10,903, for a gain of $2,279. The Bethlehem Steel stock sold in 1973 for $2,897.84, for a loss of $186.56. The ASI stock was purchased in September 1971, after the marriage. It sold in 1972 for $3,219.30, for a gain of $484.98.

■ In this case, husband was unable to trace the separate funds for which he is seeking reimbursement. The funds were apparently placed in one of the eight to ten bank accounts he maintained during the marriage, or were spent as they were received. Even if the separate funds could be traced, the fact that they were commingled with large amounts of community funds is a factor for the court to consider in determining whether transmutation occurred. *Nichols v. Nichols.* The commingling of separate funds with community funds would also support an inference that the owner of the separate funds made a gift to the community. *Id.*

Husband cites several cases for the proposition that where separate funds are expended for the benefit of the community, the community becomes indebted to the separate estate for those funds. The trial court did not err in rejecting his argument for two reasons. First, he did not prove that his separate funds were expended for the benefit of the community. He did not know exactly what was done with any of this money. Second, in the cases cited by husband, the parties could trace the funds to the particular assets and a lien against those assets could be established. For example, in *McElyea v. McElyea,* 49 N.M. 322, 163 P.2d 635 (1945), the court held that if the community paid any part of a separate debt, it would be entitled to repayment of the amount so expended. Husband was not able to trace the funds to any expenditure or to any specific property.

■ As husband was unable to trace any of the funds or the proceeds from the sales of stock, and as they were commingled with community property in joint accounts, the presumption of community property was not overcome. *See Nichols.* The trial court did not err in refusing his requested findings on this matter and did not err in refusing to direct the community to reimburse him for these funds.

## V. WHETHER THE TRIAL COURT ERRED IN FAILING TO HOLD THAT $30,000 OF ALIMONY PAID TO WIFE FROM THE DATE OF DIVORCE TO THE DATE OF FINAL JUDGMENT WAS AN ADVANCE AGAINST HER SHARE OF THE COMMUNITY PROPERTY.

Husband contends that the trial court erred in failing to hold that the alimony payments of $1,500 per month, which he paid from the date of the divorce through November 1984 (twenty months, for a total of $30,000), were an advance to wife against her share of the community property. He argues that the trial court abused its discretion in ordering this amount of temporary alimony and, therefore, it should have been characterized as part of wife's share of the community. Husband requested a conclusion of law that half of the alimony received by wife from April 1983 through November 1984 was an advance against her share of the community. This conclusion of law was rejected by the trial court, which found that wife had received such alimony, and concluded that she was not entitled to any further alimony.

Wife argues that until the final judgment was entered in December 1984, husband owed her a duty of support. We need not decide the correctness of this argument because the trial court must be affirmed

for another reason. NMSA 1978, Section 40–4–7(A) (Repl.Pamp.1983), provides that the court may provide for the support of either party during the pendency of the proceeding as in its discretion may seem just and proper.

■ An award of alimony will not be disturbed on appeal unless there has been an abuse of discretion. *Weaver v. Weaver*, 100 N.M. 165, 667 P.2d 970 (1983); *Michelson v. Michelson*. The trial court has wide discretion to award the amount of alimony. *Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984); *Lovato v. Lovato*, 98 N.M. 11, 644 P.2d 525 (1982). This discretion is given to the trial court to provide the alimony recipient the subsistence necessary after the support of the marriage is removed. *Russell v. Russell; Brister v. Brister*, 92 N.M. 711, 594 P.2d 1167 (1979). The total circumstances of the supporting spouse as well as those of the recipient spouse must be considered in order to avoid hardship on the supporting spouse and to not permit the recipient spouse to abdicate the responsibility for his or her own support and maintenance. *Russell v. Russell; Lovato v. Lovato*. The supreme court has expressed approval for the idea that alimony should be viewed as a means of allowing a divorced spouse to gain personal independence by helping the person disadvantaged by the marriage and the divorce to extricate himself or herself from such a position. *Russell v. Russell; Dunning v. Dunning*, 24 SBB 725 (Ct.App.), *cert. granted* June 6, 1985.

■ The court in this case considered the factors appropriate to a determination of an award of alimony. *See Howard v. Howard*, 100 N.M. 105, 666 P.2d 1252 (1983); *Ellsworth v. Ellsworth*, 97 N.M. 133, 637 P.2d 564 (1981). The award of $1,500 per month, until the property division was ordered, met wife's needs as well as allowing her to pay some community debts, and some of husband's separate debts. It allowed her to get a start in her profession of selling real estate. Husband's contention, that because of the amount of property wife is eventually to receive, she is not and never was entitled to alimony under New Mexico law, is incorrect. In *Weaver v. Weaver*, the supreme court remanded to the trial court to determine what the wife's needs were and whether any alimony was justified even though wife had received an inheritance of $200,000. Thus, alimony may be justified even though wife eventually receives a large amount of property. Unlike *Weaver*, at the time the alimony was being paid, wife had not received her share of the community. She was more in need of alimony than Mrs. Weaver. The amount and the duration of the alimony in this case are appropriate in view of the factors listed in *Ellsworth*.

Husband states that it is appropriate to deduct interim support from the recipient's share of the community. *Merrill v. Davis*, 100 N.M. 552, 673 P.2d 1285 (1983). In that case, there was a dispute over whether the parties had agreed that the payments were considered to be partly in settlement of the community property division. There was no such agreement in this case.

■ Husband also argues in his reply brief that points on appeal not argued and supported with citation to authority are deemed abandoned and will not be reviewed. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 501(a)(4), (b) (Cum.Supp.1985), provides that an answer brief shall contain the contentions of the parties with respect to each issue presented, with citations to the authorities and statutes relied on. Wife's answer brief on this issue contains argument and a citation to one case, *Merrill v. Davis*, cited by husband, which she distinguishes. Husband has not demonstrated that any rule violation occurred nor that any appellate argument has been abandoned. Therefore, this contention lacks a factual premise.

## VI. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT HUSBAND WAS ENTITLED TO REIMBURSEMENT FOR CERTAIN POST–DIVORCE EXPENDITURES MADE FROM COMMUNITY ASSETS.

■ Wife contends that because the community estate was not divided until De-

cember 17, 1984, it was error for the trial court to reimburse husband for post-divorce expenditures he made in order to preserve and maintain community property. Finding nos. 26 and 27 show that husband paid out $129,301 after the date of the divorce but before December 17, 1984, for the benefit of the community. Conclusion nos. 10, 11, and 12 state:

10) Monies expended for the benefit of the community after the date of divorce should be reimbursed by the community, that is the community should be reduced by such amounts spent.

11) The net community estate should be reduced in the amount of $102,460 for monies spent post-divorce with respect to the community warehouse at 209 San Mateo.

12) The net community estate should be reduced in the amount of $26,841 for monies spent post-divorce with respect to the community's income and property tax obligations and other community expenses.

Wife asks that the amount reimbursed be added back to the community estate for distribution to the parties. She contends that the effect of the trial court's ruling was to reimburse husband for the payments and to reduce the community estate to her detriment.

The trial court has a duty to divide the property of the community as equally as possible. *Bustos v. Bustos*, 100 N.M. 556, 673 P.2d 1289 (1983); *Michelson v. Michelson*. On the date the property was divided, the community obligations had been paid with community funds. The value of the community estate was accordingly the same as it had been on the date of divorce. The trial court simply recognized this by deducting the payments that had been made from the value of the assets. In its March 29, 1983 decree dissolving the marriage, the trial court retained jurisdiction to determine debt allocation. By reducing the community estate by the community obligations paid by husband with community funds, the court's December 17, 1984, judg-ment determines the debt allocation. The court did not abuse its discretion by reducing the amount of the community estate available for distribution by the amounts paid by husband.

**VII. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE COMMUNITY WAS NOT ENTITLED TO ANY MONIES GENERATED BY HUSBAND'S C.P.A. PRACTICE AFTER THE DATE OF DIVORCE.**

Wife contends that the trial court erred in determining that the community was not entitled to any monies generated by husband's C.P.A. practice after the date of divorce. The trial court entered a partial decree of divorce on March 29, 1983. By this decree, the court dissolved the marriage but retained jurisdiction to determine the issues of property division and debt allocation. Wife argues that the C.P.A. business remained a community asset until December 17, 1984, the date that the final judgment incident to final decree of divorce was entered. She also argues that the community owns the earning power of each of the spouses, and that the divorce decree could not legally terminate this interest of the community. Therefore, she contends husband's income remained community property.

When a partial decree of divorce is entered, even though the decree is not final for purposes of appeal, subsequent earnings of a former spouse are not subject to division up to the date of the final decree. Upon dissolution of the marriage, the community no longer owns the labor of the parties.

Wife's argument that post-divorce income earned by husband is community property is also without merit. Section 40–3–8(A)(1) defines separate property to include property acquired by either spouse after entry of a decree of dissolution of marriage. The partial decree entered on March 29, 1983, was such a decree. A court may dissolve the marital relationship prior to ruling on the other issues raised in

the divorce petition. *See Thornton v. Gamble.* The trial court did not err in determining that the community was not entitled to any monies generated by the C.P.A. business after the date of divorce.

### VIII. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NO EVIDENCE THAT HUSBAND TRANSMUTED HIS INTEREST IN THE JUSTIN PROPERTY FROM SEPARATE TO COMMUNITY PROPERTY.

Wife contends that the trial court erred in holding that there was no evidence that husband transmuted his interest in the Justin property from his separate property to community property. The trial court found that there was no evidence of transmutation, and there was no evidence that the community invested significant amounts of time or money into the Justin property.

The issue is whether there was substantial evidence to support the trial court's findings and conclusions. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. New Mexico State Racing Commission,* 100 N.M. 434, 671 P.2d 1145 (1983). On appeal, we view the evidence in the light most favorable to support the trial court's decision. *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 654 P.2d 548 (1982).

Husband testified that he owned a residence at 5042 Justin N.W., Albuquerque, prior to marriage. The property was used as the community residence until April 8, 1974, when the property was sold. The parties received the sum of $29,528 as net proceeds from the sale. During the marriage, the community paid $2,212 on the principal of the mortgage on the Justin property. The trial court gave the community credit for the principal that the community paid on the mortgage but refused to credit the community with any appreciation in the value of the Justin property that occurred during marriage. The proceeds from the sale of the Justin property were deposited into a joint account with other funds. This account was used to make the down payment on the purchase of the community residence at 3920 Camino de la Sierra N.E., Albuquerque. The trial court reduced the community's interest in the Camino de la Sierra residence because of the $27,313 proceeds from the Justin property which were re-invested in the Camino de la Sierra residence. The trial court also attributed some of the appreciation in the Camino de la Sierra residence to these funds.

The Justin property was clearly acquired before marriage and was, therefore, husband's separate property. § 40-3-8. The community was entitled to a lien for funds and labor expended on the Justin property. *See Chance v. Kitchell,* 99 N.M. 443, 659 P.2d 895 (1983). The trial court gave the community credit for $2,212 of community funds, which reduced the principal on the mortgage during the marriage. Husband testified that no time and energy was used to improve the Justin property after the marriage. The only improvements that occurred during marriage were seeding the backyard and putting in a sprinkler system. There was no evidence as to the value of these improvements. There was substantial evidence to support the trial court's decision that $2,212 from the sale of the Justin property which was re-invested in the Camino de la Sierra residence was community property and that $27,313 was husband's separate property. There was substantial evidence to support the trial court's decision that none of the appreciation on the Justin property was community property. *See Portillo v. Shappie,* 97 N.M. 59, 636 P.2d 878 (1981).

Evidence that property has been transmuted from separate to community property must be by clear, strong and convincing proof. There was no evidence that husband transmuted his interest in the Justin property by gift. *See Nichols v. Nichols.* The tax return for 1974 shows that he considered his separate interest in the Justin property to have been carried

over into the Camino de la Sierra property. The trial court did not err in finding that there was no evidence of transmutation.

Wife is, in reality, arguing that the sales proceeds from the Justin property were so commingled with community property that the trial court should not have traced them into the Camino de la Sierra residence. Wife contends that *Nichols* should be read for the proposition that even though the proceeds from the Justin property could be traced, the fact that they were commingled with community funds in a joint bank account makes the Camino de la Sierra residence community property and deprives husband of any separate interest in Camino de la Sierra. We believe this is reading too much into *Nichols v. Nichols*. The court, in *Nichols*, held that there had been a transmutation by gift so that the husband had no separate interest in the property. The court in this case held that the Camino de la Sierra residence was community property. The issue then became whether the husband had any lien against the property for his separate funds which were contributed to the purchase price. Under *Chance v. Kitchell,* husband does have such an interest. The trial court subtracted such interest from the value of the residence before dividing the property. *Wiggins v. Rush,* 83 N.M. 133, 489 P.2d 641 (1971), is also relied on by wife for the proposition that where separate property has been so commingled with community property that the separate property cannot be traced, it is presumed that such property is community property. That case is distinguishable as the court found in that case that nothing appeared in the record to indicate that the separate funds of Mr. and Mrs. Wiggins were traceable. Husband testified that the proceeds from the Justin property were rolled over into the Camino de la Sierra residence. Thus, there was evidence to support the trial court's decision.

## IX. WHETHER THE TRIAL COURT ERRED IN VALUING THE COMMUNITY RESIDENCE AT $195,000.

Wife contends that the trial court erred in valuing the community residence on Camino de la Sierra at $195,000. The husband's expert witness, Bob Dienst, an associate broker with Hooten Stahl, testified that the residence could sell for between $215,000 and $220,000 with flexible financing. He felt comfortable valuing the property at $195,000 if a potential buyer had to refinance it. The wife's expert, Henry Slagle, a real estate appraiser, valued the property at $167,500. Wife, who received her real estate sales license in September 1982, testified that the value of the property was $165,000.

The court of appeals will not reverse the trial court's findings if they are supported by substantial evidence, and any disputed fact is to be resolved in favor of the successful party and the evidence viewed in an aspect most favorable to the successful party. *Lucas v. Lucas; Fitzgerald v. Fitzgerald,* 70 N.M. 11, 369 P.2d 398 (1962). Conflicting evidence between experts must be resolved by the trial court. *Provencio v. New Jersey Zinc Co.,* 86 N.M. 538, 525 P.2d 898 (Ct.App.), *cert. denied,* 86 N.M. 528, 525 P.2d 888 (1974).

Wife's contention goes to the weight to be given the testimony and to the credibility of the witnesses. These are to be determined by the trier of fact, not the appellate court. *Fitzgerald v. Fitzgerald.* The court accepted Bob Dienst as an expert. Bob Dienst had been a realtor for twenty months, an associate broker for sixteen-and-one-half months, and an auctioneer. He had sold thirty-four to thirty-five properties within the previous twenty months and expected to be a multi-million dollar producer for 1984. Ninety-five percent of the properties he had sold were residential. He had been trained in various approaches to valuing residential properties. The testimony of Bob Dienst was sufficient to support the trial court's valuation of the property. *See Lucas v. Lucas.*

Therefore, the trial court's final judgment is affirmed.

**IT IS SO ORDERED.**

DONNELLY and MINZNER, JJ., concur.