**47 P.(2d) 910**

**WILLIAMS v. SINCLAIR REFINING CO., Inc.**

**No. 3991.**

Supreme Court of New Mexico.

June 24, 1935.

Rehearing Denied July 29, 1935.

W. H. Patten, of Hobbs, for appellant.

L. C. Heath, of Brownfield, Tex., and T. A. Whelan, of Lovington, for appellee.

SADLER, Chief Justice.

Plaintiff sued for conversion of personal property and also, as he expresses it in his brief here, for trespass, and, as the defendant states it, for rent of real property. The cause was tried to the judge, who gave judgment for $1,824.50, of which $1,304.50 was for the conversion, and $520 for the other claim.

Appellee (plaintiff) contends that there is nothing before us for review, pointing out the lack of any other than a general exception recited in the judgment. Appellant did, however, request findings and conclusions, all of which were refused. Under our present rules, this is sufficient for the preservation of any error there may have been in this general refusal.

Appellant has set forth fifteen points relied upon for reversal. He has disregarded them completely thenceforth, and it is only by analysis of the argument as a whole that we are able, and then none too satisfactorily, to determine what errors it is sought to bring to our attention.

It is first contended that the evidence is insufficient to support that part of the judgment based on the theory of conversion. We are unable to say, however, that the trial court's conclusion on this feature of the case is not based upon substantial evidence.

It is true, as indicated by the meaning we give comment of the trial judge made before he found the facts, that there was no direct testimony showing just what equipment was in the filling station when appellant took possession under its lease from Gibson. Nevertheless, appellee testified that the equipment for conversion of which he was given judgment was actually in the filling station when he locked it up a few weeks before appellant's possession commenced.

■ The subsequent finding by the trial court that the equipment and merchandise for which judgment was rendered were appropriated and converted by appellant necessarily fixes custody and possession of such property in the appellant. Such possession can rest only upon a presumption that the property which appellee had left locked in the filling station remained and continued in the condition in which he left it. This presumption, while not as strong proof of the fact questioned as might be desired, in a variety of circumstances has been held strong enough to warrant accepting as true the fact presumed. 1 Jones Commentaries on Evidence (2d Ed.) § 271.

Defending against the claim of trespass or of liability for rent, appellant pleaded that it obtained and held possession under a lease executed by one Gibson, purporting also to have been executed (but not in fact executed) by the appellee; and that it had paid to Gibson all the rent reserved.

■■ Both parties agree, and hence we do not question, that appellee and Gibson sustained the relationship of cotenants as to the lot and building which are the subject of the lease to appellant. Accordingly Gibson, under the facts here shown, was without authority merely by virtue of his cotenancy to bind Williams by signing the latter's name to a lease demising the joint interest. Freeman on Cotenancy and Partition (2d Ed.) §§ 182, 183; 62 C. J. 536. And, of course, payment of rent to Gibson, even though by checks payable to the joint order of Gibson and Williams, without ratification by the latter, could not operate to discharge appellant from liability to Williams for any wrongful or unauthorized acts by it with reference to Williams' moiety in the common property. 62 C. J. 538, § 217.

■ However, these observations do not conclude the matter. The lease from Gibson to appellant, even though ineffective as to Williams, neverthless was valid as between the parties thereto (62 C. J. 538, § 217), and created the relationship of cotenancy as between Gibson's lessee, the appellant here, and Williams. 7 R. C. L.

878; Du Rette v. Miller, 60 Or. 91, 118 P. 202, Ann. Cas. 1913D, 1163. Thereupon appellant became entitled to the reasonable use, benefit, and possession of the common property along with Williams, its cotenant. Freeman on Cotenancy (2d Ed.) § 251; 62 C. J. 420. This without liability to Williams in an appropriate form of action for such use and occupancy, even though the latter may not have shared therein, provided there was no ouster of his right so to do. Badger v. Holmes, 6 Gray (Mass.) 118; Austin v. Ahearne, 61 N. Y. 6. See also Ord v. Chester, 18 Cal. 77; Filbert v. Hoff, 42 Pa. 97, 82 Am. Dec. 493; Riddle v. Ellis, 139 Okl. 68, 281 P. 286; Prairie Oil & Gas Co. v. Allen (C. C. A.) 2 F.(2d) 566, 40 A. L. R. 1389.

▮In order to prove ouster there must be some "express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally." Bradford v. Armijo, 28 N. M. 288, 210 P. 1070, 1074. See also Carpentier v. Mendenhall, 28 Cal. 484, 87 Am. Dec. 135; Filbert v. Hoff, supra, and Colburn v. Mason, 25 Me. 434, 43 Am. Dec. 292. In the Colburn Case, last cited, the court said: "One tenant in common occupying the estate does not oust or disseize another tenant in common, or one who claims to be such, without some unequivocal act manifesting an intention to do so."

▮A careful review of the record convinces us that there was never any ouster of appellee by appellant. In the first place it entered purporting to hold under, and not against, appellee. The appellee's name as one of the parties lessor to this instrument, a lease, ostensibly signed by him along with his cotenant, Gibson, although covering the entire joint interest, removed it from application of the principle recognized in Armijo v. Neher, 11 N. M. 645, 72 P. 12, 13.

▮Of course, entry by one cotenant under an instrument purporting to convey or embrace the entire estate or interest is necessarily adverse to every cotenant who appears neither to have signed nor to be privy thereto. But if he be either party or privy to such instrument, or appear so to be, another cotenant entering under the instrument holds or appears to hold under him.

Absent bad faith in appellant's reliance upon the validity of the lease here involved as to appellee (and bad faith is neither claimed nor proven), its entry cannot be deemed an ouster of the latter, but rather a recognition of his title and interest, until such time as appellee repudiated the authority of the lease to bind him. When this repudiation took place, appellee seems to have acted under an entire misconception of his own, and in utter disregard of appellant's, rights in the premises.

■ As cotenants of the property, each had a right to the equal use and enjoyment thereof. But appellee on more than one occasion asserted a claim to nothing less than the whole interest. He claimed, not the right to· share the premises "with the defendant" (cf. Carpentier v. Webster, 27 Cal. 524), but a right to the sole possession thereof. Appellant so interpreted his demand for possession in June, 1931, and within a few days yielded full possession, re-entering after a period of occupancy by appellee and when he had again locked up the premises and left the community.

If doubt could exist as to the nature of appellee's demands, it is resolved by the course taken upon his return to Hobbs in May, 1932, from El Paso. Again finding appellant in possession, and it failing upon demand to vacate, he instituted a forcible entry and detainer action against the appellant for the purpose of dispossessing it. He thus conclusively characterized the demands which he had from time to time made upon his cotenant, viz., a demand for sole possession and not the right to share with it the use and occupancy of the property.

■ But appellee was not entitled to sole possession. Nor would a mere refusal by appellant to yield sole possession when entitled to equal possession constitute an ouster. In Hamby v. Wall, 48 Ark. 135, 2 S. W. 705, 706, 3 Am. St. Rep. 218, Mr. Chief Justice Cockrill, speaking for the court, said: "The jury found, in effect, that the defendant made no profit by operating the gin; and (treating it, as the appellant does, as realty) it is a well-settled principle of the common law that the mere occupation by a tenant of the entire estate does not render him liable to his co-tenant for the use and occupation of any part of the common property. The reason is easily found. The right of each to occupy the premises is one of the incidents of a tenancy in common. Neither tenant can lawfully exclude the other. The occupation of one, so long as he does not exclude the other, is but the exercise of a legal right. If, for any reason, one does not choose to assert the right of common enjoyment, the other is not obliged to stay out; and if the sole occupation of one could render him liable therefor to the other, his legal right to the occupation would be dependent upon the caprice or indolence of his co-tenant, and this the law would not tolerate. 4 Kent., Comm.* 369; Freem. Co-tenancy, § 258; Everts v. Beach, 31 Mich. 136 [18 Am. Rep. 169]; Israel v. Israel, 30 Md. 120 [96 Am. Dec. 571]; Fielder v. Childs, 73 Ala. 567; Hause v. Hause, 29 Minn. 252, 13 N. W. 43; Reynolds v. Wilmeth, 45 Iowa, 693; Pico v. Columbet, 12 Cal. 414 [73 Am. Dec. 550]; Becnel v. Becnel, 23 La. Ann. 150."

It results that the court was in error in allowing recovery against appellant, upon any theory, for use and occupancy of the common property. The judgment of the trial court will therefore be affirmed as to its award of damages for conversion, and otherwise reversed. The cause will be remanded, with a direction to the trial court to set aside so much of its judgment as awards recovery against appellant for or on account of its use and occupancy of the premises in question, and to dismiss with prejudice appellee's claim therefor. Appellant will recover its costs in this court.

It is so ordered.

BICKLEY, WATSON, and ZINN, JJ., concur.

HUDSPETH, Justice (dissenting in part and concurring in part).

I concur in the reversal of the judgment for rent, but the holding of the appellant liable for the equipment, valued at $1,304.50, seems to me not supported by substantial evidence. The learned trial judge, at the close of the case, said: "As to this equipment that was taken there, I think the only testimony that affects this is this man Tex Parks evidence what was actually in there. They had gone off and left this place. The court can find no testimony showing what was in there when they opened it up."

Where the trial court's finding of fact is based upon a presumption, I take it the correct procedure is for the appellate court to consider all the facts and circumstances surrounding the transaction, and from the record determine whether or not the inference drawn by the trial court is justified. The trial court indulged the presumption that a state of things once established will be supposed to continue until the contrary is shown. He based his finding upon the testimony of appellee that he placed the equipment in the filling station, and presumed that it remained there and was delivered to the appellant, who was placed in lawful possession of the station by appellee's cotenant. Professor Wigmore states: Wigmore on Evidence (2d Ed.) § 2494. Theory of Presumptions. "* * * Perhaps the best statement of the question is this: '(The proposition) cannot merely be, Is there evidence? * * * 'The proposition seems to me to be this: Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?'"

Elliott on Evidence, vol. 1, § 81, reads as follows: "Presumptions of fact have been defined as 'inferences which from certain proved facts, are considered as prima facie established, or which, in the absence of rebutting evidence, should be or may be drawn by the court or jury, and which

must yield to direct rebutting evidence.' A learned judge has said: 'Presumptions of fact are questions of fact. They are merely the major premises of those inferences which juries are at liberty to draw, in the light of their experience as men of the world, from facts directly proved.' Another judge long ago said: 'A presumption of any fact is properly an inferring of that fact from other facts that are known; it is an act of reasoning.' It is, in the nature of a logical inference or argument. It is, says another writer, 'a logical argument from a fact to a fact; or, as the distinction is sometimes put, it is an argument which infers a fact otherwise doubtful from a fact which is proved.'" See, also, Hawkins v. Byrn, 150 Tenn. 1, 261 S. W. 980, 983; Doran v. United States Building & Loan Ass'n, 94 Mont. 73, 20 P.(2d) 835, 837; 22 C. J. 79.

The undisputed facts are: That the appellee, Williams, and his cotenant, Gibson, on February 10, 1931, executed a lease to appellant of the filling station in block 42; that on April 8th, after the removal of the filling station building, in the month of February, to the new location on lots 1 and 2 in block 21 in the other Hobbs townsite, a second lease was delivered to appellant which bore the name and acknowledgment of appellee and Gibson, but which the court found was not executed by the appellee; that both leases were on the printed form used by the appellant in leas-ing filling stations (the only difference in the two leases being the description of the land), apparently for the purpose of compelling proprietors to sell only Sinclair gasoline; that appellee locked up this filling station, situated in a boom oil town, and left it unguarded for a considerable period of time, between his departure and the placing of appellant in possession by Gibson; that Gibson put Tex Parks in this station to sell accessories, and that Tex Parks also sold appellant's gasoline; that appellee returned to Hobbs in June, 1931, and shortly afterwards took over the filling station, and continued to buy gasoline from appellant in Tex Parks' name; that he testified the equipment involved in this case had been taken before his return; that the agents of appellant denied ever having received the equipment, and no explanation is offered as to the absence of Gibson, who could have testified as to the equipment delivered to appellant, and who at the time of the disposition of the filling station was an equal owner with appellee of the remaining equipment; that appellee's equipment was mortgaged, and during the month of March, 1931, suit was commenced against appellee which resulted in equipment being taken from the filling station on execution after appellee took possession in June; that the station was burglarized about December 24, 1930, and equipment taken. Eliminating from consideration the fact that H. L. Lyman,

who operated the filling station for appellee at the old stand until about the middle of February, 1931, testified that the equipment involved in this suit was not in the filling station at the time he left, shortly before the removal of the station, I do not think that a presumption that the equipment came into the possession of the appellant and was appropriated by it is justified.

I therefore dissent.