BEATTY, Justice.
Defendants appeal from an order of the trial court granting plaintiff’s complaint for a sale of property held in contenancy for division of the proceeds. We affirm.
Plaintiff filed a complaint for partition in March of 1973, alleging that she was the owner of an undivided one-half interest in property in Pike County which could not be divided equitably and requesting that the property be sold and the proceeds divided among the cotenants. Defendants, owners of the other one-half interest in the property, answered, asserting that they had acquired the entire interest in the property by adverse possession or prescription, that plaintiff was guilty of laches and was, therefore, barred from asserting her claim, and that they were entitled to specific performance of an alleged oral contract in which Mrs. Jenee Granberry, plaintiff’s predecessor in title, promised to convey her interest back to Tom Hollis, defendants’ predecessor in title, in exchange for work Hollis performed.
Although the case was tried in 1973, the trial court’s judgment ordering the sale was not entered until November 28, 1984. The trial court found that the respective parties owned undivided one-half interests in property which could not be divided equitably. On the question of adverse possession, the trial court found that there was no proof of ouster of plaintiff or her predecessors in title or that the possession of the defendants was hostile to the title and constructive possession of plaintiff. Similarly, the trial court rejected defendant’s arguments of prescription and laches. With regard to specific performance, the court noted that it had ruled earlier that proffered evidence of the oral agreement between Mrs. Granberry and Tom Hollis was incompetent under the Dead Man’s Statute, § 12-21-163, Code of 1975.
Plaintiff’s claim to the property is based upon a deed executed and recorded in 1923 in which Tom and Florence Hollis conveyed a one-half interest in the subject property to Mrs. Granberry. Plaintiff is Mrs. Gran-berry’s great-niece and sole heir. Defendants claim their interest in the property from Tom and Florence Hollis. Plaintiff is a cousin of defendants.
Where testimony is presented ore tenus, the findings of fact of the trial court based on that testimony will be sustained unless they are clearly wrong or manifestly unjust. Sterling Oil of Oklahoma v. Pack, 291 Ala. 727, 287 So.2d 847 (1973). Defendants assert, however, that the ore tenus rule does not apply to this case, because, they say, the trial court made an error in its statement of the facts. The trial court’s order states that, prior to her death in 1961, Florence Hollis was entitled to only an unassigned dower interest in the property. Defendants argue that Florence had record title to a one-half interest in the property.
The portions of the record cited by defendants do not conclusively show that, at the time of the conveyance to Mrs. Gran-berry by the Hollises, record title to the *874 property was in Florence rather than Tom. Assuming, arguendo, that the trial court did err on this point, the error is irrelevant to the issues raised on appeal. Therefore, the cases cited by defendants, Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955), and Esco v. Davidson, 238 Ala. 653, 193 So. 308 (1940), do not support their argument.
Another question raised by defendants is whether the ore tenus rule should apply to findings made by the trial court eleven years after trial of the case. The delay between the trial and decision of this case is inexcusable. Nevertheless, the trial court did hear the testimony and observe the demeanor of the witnesses. For this reason, even considering the delay, the trial court was in a better position to evaluate the credibility of the witnesses than are we, who must rely solely on written documents.
Defendants allege that the trial court erred in holding that there was no evidence that they and their predecessors in title obtained the entire property by adverse possession or prescription. The trial court relied upon Tyson v. Jackson, 364 So.2d 1140 (Ala.1978), in which this Court reversed a lower court’s ruling that a coten-ant who had farmed the land, kept fences around it, and paid taxes on it had ousted his cotenant. In that case, we stated:
“The rule has long been established in this jurisdiction that the possession of one tenant in common is presumed to be the possession of all; and such possession does not become adverse to the co-tenant until he is actually ousted or short of ouster, the adverse character of the possession of one is actually known to the other, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenant on notice of its adverse character. Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75 (1952); Hames v. Irwin, 253 Ala. 458, 45 So.2d 281 (1949); Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259 (1937).
“Before the possession of a cotenant may be regarded as adverse to his coten-ant, he must repudiate the cotenant’s interest in the property by act or declaration. Livingston v. Livingston, 210 Ala. 420, 98 So. 281 (1923). This means that there must be some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally. Williams v. Sinclair Refining Co., 39 N.M. 388, 47 P.2d 910 (1935); 86 C.J.S. Tenancy in Common § 27. In Ratliff v. Ratliff, supra (234 Ala. at 322, 323, 175 So. at 261), this court stated the rule as follows:
“ ‘... The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of cotenants; but there must be positive information of the facts, however informally communicated or acquired. ... ’ ”
Tyson, 364 So.2d at 1141-42. See also, Hayden v. Robinson, 472 So.2d 606, 610 (Ala.1985). Similarly, we have stated: “The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions.” Gay v. Tompkins, 385 So.2d 973, 983 (Ala.1980).
The evidence in this case showed that defendants and their predecessors in title had paid the taxes on the property, farmed it and had tenants farming it, kept cows on the property, and, on at least one occasion, sold timber off the land. There was evidence that plaintiff and her predecessors in title had never received any rents or profits from the land. However, there must be clear and unequivocal evidence of ouster, apart from customary usage of the land and retention of income, which is made known to the cotenant.
Florence Hollis executed two deeds in 1958 dividing the property in question between her son, Will Tom Hollis, and her daughter, Mildred Shanks. These deeds, which were recorded in 1965, purported to convey the entire fee. Clearly, this is evidence that defendant's predecessors claimed the entire property. However, *875 there was no evidence that plaintiff or her predecessors knew of the deeds prior to their recording. Even if we hold that recording the deeds provided constructive notice of the claim, there was insufficient time between the recording of the deeds in 1965 and the filing of the present lawsuit in 1973 for the prescriptive period to have run.
Furthermore, the evidence showed that as late as 1968 defendants did not deny plaintiffs claim to a one-half interest in the land. Mrs. Shanks, who had knowledge as early as 1932 that her father and mother had deeded a one-half interest in the property to Mrs. Granberry, testified as follows:
“Q. Mrs. Shanks, you do recall your conversation in 1968 with Mrs. Post?
“A. Yes, sir.
“Q. And that conversation was concerning this property and her interest in that property, wasn’t it, Mrs. Shanks?
“A. Yes.
“Q. And was the gist of the conversation wanting to know if we could divide this thing up?
“A. No, that wasn’t mentioned. She just asked me where it was and I told her down that side road.
“Q. You didn’t tell her at that time that she didn’t own an interest in it?
“A. No.”
Defendants rely upon the case of Rutledge v. Bank of Heflin, 442 So.2d 1 (Ala.1983), in which this Court affirmed a ruling of the trial court, based on ore tenus evidence, that a cotenant had acquired the entire property by adverse possession or prescription. In Rutledge, we quoted and relied upon the following passage from Annot., 82 A.L.R.2d 132 (1962):
“ ‘Numerous cases hold, recognize, or affirm that if a cotenant enjoys the sole, and the undisturbed and peaceable, occupancy for a long period of time, such as for 20 years or longer, without there having been any sharing with, or demand for a sharing by, those out of possession, of the rents and profits, or of the possession or other benefits of the premises, and without there having been any ac-knowledgement of the cotenancy on the part of the possessor, the facts and circumstances will, in various instances, warrant a presumption or inference that an actual ouster or disseisin of the possessor’s cotenants occurred, and that an adverse possession was accordingly established against them, as of an early date (or, according to some cases, that a grant by them was made), in reasonable explanation of such possession and circumstances and in affirmance of title in the possessor, though no direct evidence of an actual ouster has been adduced.’ ”
Rutledge, 442 So.2d at 2. See also Annot., 82 A.L.R.2d at 149-50 (summary of Alabama cases recognizing the doctrine of presumed ouster). Tyson was distinguished by the Court in Rutledge in the following passage:
“The appellants rely heavily upon Tyson v. Jackson, 364 So.2d 1140 (Ala.1978), a case which involves constructive possession. That case is readily distinguishable from the one before us by the fact that, in Tyson, after the death of the original co-tenant through whom the defendants claimed title by prescription, Matthew Jackson, his brother, A.F. Jackson, the other original co-tenant, conveyed his interest to a third party. This is a clear indication that A.F. Jackson, until the time of that conveyance, did not consider that he had ever relinquished his right in and to the property. ...”
Rutledge, 442 So.2d at 3-4.
In the present case, as in Tyson, there was evidence that the cotenant exercising constructive, rather than actual, possession, did not intend to relinquish any interest in the property. Mrs. Sneed testified that her husband looked after Mrs. Gran-berry’s affairs for her, including the interest in the property in question. Mrs. Sneed stated that both she and her husband had visited the property “in the interest of Mrs. Granberry.”
Our review of the facts of this case, coupled with the presumptions of the ore *876 tenus rule, reveal that the trial court did not err in following Tyson.
Defendants also argue that plaintiff is barred from relief by laches. However, the principle of laches does not apply “in the absence of knowledge or sufficient information” to put the party who delayed asserting his rights “on notice of, or inquiry as to, an adverse claim.” Duncan v. Johnson, 338 So.2d 1243, 1254 (Ala.1976). As stated above, there is a presumption that the possession of one cotenant is the possession of all in the absence of actual ouster or notice that a cotenant is claiming the property adversely. Tyson v. Jackson, 364 So.2d at 1141-42. Plaintiff and her predecessors in title had no notice, at least until the deeds from Florence Hollis were recorded in 1965, that defendants and their predecessors in title were claiming the entire fee. After receiving notice of this fact, plaintiff, who filed the present suit in 1973, did not sleep on her rights. Therefore, the principle of laches is inapplicable to this case.
Defendants’ final argument is that the trial court erred in excluding as viola-tive of the Dead Man’s Statute testimony of Mrs. Shanks that she overheard her father, Tom Hollis, state that he had agreed to make repairs to Mrs. Granberry’s house in Monticello in exchange for Mrs. Granberry’s interest in the property at issue in this suit. The gravamen of defendants’ claim is that plaintiff waived any objection to their evidence by introducing similar evidence in the following excerpt from plaintiff’s testimony:
“In the summer of 1968 I took the Deed to Mrs. Shanks’ home to ask her about it. On this particular day Mrs. Nell Hollis was in Montgomery, she was not there. And Mrs. Shanks said she thought that her father, Tom Hollis, and Mrs. Granberry had a verbal agreement whereby Tom Hollis, her father, would fix up a tenant house if Mrs. Granber-ry — or Mrs. Granberry would then render her half interest to this property.”
We need not decide whether plaintiff’s remarks were sufficient to constitute a waiver within the meaning of Code of 1975, § 12-21-163. The proffered testimony of Mrs. Shanks was clearly inadmissible hearsay, which was objected to on that ground, and was properly excluded by the trial court.
Let the judgment in this case be affirmed.
AFFIRMED.
FAULKNER, ALMON, SHORES and HOUSTON, JJ., concur.