KENNEDY, Justice.
In 1954, W.F. and Gladys Ward purchased an undivided three-fourths interest in property (the “Pearce lot”) in Dale County, Alabama, from J.D. Pearce and Louie *878 Ray Pearce. In 1978, C.E. Horne acquired a parcel of property adjacent to the west and south boundaries of the Pearce lot. The remaining undivided one-fourth interest in the “Pearce lot” was owned by Wallace Pearce McChesney. In June 1983, McChesney conveyed by quitclaim deed his interest in the Pearce lot to C.E. Horne.
Shortly after Horne purchased the property adjacent to the Pearce lot, the Wards filed a complaint against Horne in the Dale Circuit Court. They alleged that a fence and hedgerow had divided the Pearce lot and the adjacent Horne property for more than 10 years and that Horne had removed part of the fence and had closed a driveway to the Pearce lot. The Wards asked the court to issue an order (1) temporarily restraining Horne from removing the remainder of the fence and (2) declaring the fence and hedgerow to be the true boundary of the Pearce lot. The trial court issued the temporary restraining order, and it declared the fence and the hedgerow as the true boundary between the Pearce lot and the property owned by Horne. The trial court also held that, before Horne purchased his interest in the Pearce lot, the Wards, for more than 10 years before Horne purchased any interest in the property, had possessed the Pearce lot adversely as to McChesney and had thereby acquired full title to it and that, therefore, the deed purporting to convey an undivided one-fourth interest in the property to Horne was null and void.
Horne appeals, raising two issues. First, he argues that the trial court erred in holding that the Wards had possessed the Pearce lot adversely to the one-fourth interest of his predecessor in title, Wallace Pearce McChesney. Horne also argues that the trial court’s resolution of the boundary line dispute was in error. We address the issues in order.
In Howell v. Bradford, 570 So.2d 643 (Ala.1990), and in Beard v. Bates, 418 So.2d 862 (Ala.1982), this Court cited the following statements from Tyson v. Jackson, 364 So.2d 1140 (Ala.1978), to explain the long-settled law concerning adverse possession as between tenants in common:
“The rule has long been established in this jurisdiction that the possession of one tenant in common is presumed to be the possession of all; and such possession does not become adverse to the co-tenant until he is actually ousted or short of ouster, the adverse character of the possession of one is actually known to the other, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenant on notice of its adverse character. Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75 (1952); Hames v. Irwin, 253 Ala. 458, 45 So.2d 281 (1949); Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259 (1937).
“Before the possession of a cotenant may be regarded as adverse to his coten-ant, he must repudiate the cotenant’s interest in the property by act or declaration. Livingston v. Livingston, 210 Ala. 420, 98 So. 281 (1923). This means that there must be some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally. Williams v. Sinclair Refining Co., 39 N.M. 388, 47 P.2d 910 (1935); 86 C.J.S. Tenancy in Common § 27. In Ratliff v. Ratliff, supra ... this court stated the rule as follows:
“ ‘... The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of cotenants; but there must be positive information of the facts, however informally communicated or acquired....’”
364 So.2d at 1141-42.
Horne concedes that the Wards took possession of the Pearce lot and exercised control over it from the time of their purchase of an undivided three-fourths interest in the property. However, he argues, the Wards did not meet their burden of proving that McChesney, his predecessor in title, had actual notice of their adverse claim to the Pearce lot. Horne states in his brief that the only evidence tending to prove that the Wards notified or attempted *879 to notify McChesney that their possession of the Pearce lot was adverse to his one-fourth ownership in the property was the following: Gladys Ward testified that she posted three letters to McChesney advising him that the Wards were interested in buying his interest in the property for the purpose of developing it, and that if he did not respond to their offer they “would declare it as [theirs] and go ahead with the improvements on the property.” Ms. Ward testified that the first letter was returned to her by the Postal Service. At trial, she was unable to recall the address or the city to which any of the letters were sent, nor could she state a basis for believing that the address to which she sent the letters was the proper address. Ms. Ward also testified that she sent a similar letter to McChesney’s mother and that she told McChesney’s aunt that they intended to claim the property as their own. She said that they had paid the property taxes on the Pearce lot since 1954 and that, since that time, they had used the property as their own.
Horne argues that the foregoing testimony does not constitute notice because the Wards presented no testimony tending to prove that McChesney received the letters sent to him. We agree. There is a presumption that a letter, having been properly addressed, with sufficient postage, and unreturned to the sender whose address is shown on the envelope, has been received by the intended recipient. Currie v. Great Central Ins. Co., 374 So.2d 1330 (Ala.1979). The Wards presented no proof that the letters they sent to McChesney were properly addressed.
Therefore, in order to prevail, the Wards must prove either that they ousted McChesney or that their possession of the property was so open and notorious in its hostility and exclusiveness as to have put McChesney on notice of its adverse character. See Tyson, supra.
Having reviewed the record, we hold that there is no evidence tending to prove that the Wards ousted McChesney or his predecessors from the property.
The Wards contend that the trial court could have concluded from the evidence that theirs was an open and notorious possession of the Pearce lot and that, therefore, they acquired a fee simple interest in the property by adverse possession. They argue that their use of the Pearce lot for gardening and as part of their yard and the fact that they paid the taxes on the property constitute evidence of open and notorious possession of the property. We disagree. The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a dis-seisin of the cotenants. Tyson, supra, at 1142. Possession of the property for use as home and garden is a customary use of the property. See Tensaw Land & Timber Co. v. Covington, 278 Ala. 181, 176 So.2d 875 (1965). The Wards presented no other evidence tending to prove an open and notorious possession of the Pearce lot. To prevail, the Wards were required to overcome the presumption that their possession of the Pearce lot is the possession of all the tenants in common. See Tyson, supra. Because they failed to do so, we hold that the Wards did not acquire a full interest in the property by adverse possession.
Horne next argues that the trial court’s determination of the boundary line is not supported by the evidence.
The trial court heard ore tenus evidence. Where testimony is presented ore tenus, the trial court’s findings are presumed correct and will not be disturbed unless they are palpably erroneous, without supporting evidence, or manifestly unjust. Howell v. Bradford, supra. This presumption is especially strong in boundary line disputes and adverse possession cases. Howell v. Bradford, supra; Scarbrough v. Smith, 445 So.2d 553 (Ala.1984).
The Wards alleged in their complaint that for more than 10 years the western boundary of the Pearce lot and the eastern boundary of the Horne property was marked by a hogwire fence and a hedgerow running in a line from the end of the hog-wire fence, and that Horne had wrongfully closed off a driveway on property belonging to the Wards.
After an evidentiary hearing, the trial court established the western boundary of *880 the Pearce lot and the eastern boundary of the Horne property in accordance with the Wards’ allegations:
“The old hog-wire fence line which tied into the old fence on the [southwest corner of the Pearce lot.] Where the [northern end] hog-wire fence stops, the boundary line between the parties shall run through the middle of the old hedgerow. When the hedgerow stops you go on a straight line from the end of the hedgerow to the nearest telephone pole by the street on the west side of the driveway nearest to the C.E. Horne property.”
Horne does not dispute that the Wards presented evidence that the hogwire fence and the hedgerow marked the western boundary of the Pearce lot. He argues that the Wards presented no evidence supporting that part of the trial court’s order stating that the boundary continues from the end of the hedgerow in a line to the telephone pole at the edge of the street. He argues that the only testimony concerning possession of the land between the end of the hedgerow and the public road was the testimony of his son, William Van Horne, that the Hornes cared for the area between the hedgerow and the street. He argues that, although this Court must view the evidence with a presumption of correctness, it is error for a trial court to arbitrarily draw a boundary line simply in order to resolve the conflict. While Horne’s statement of the law is correct, see Catrett v. Crane, 295 Ala. 337, 329 So.2d 536 (1976), it is inapplicable to the facts of this case, because the evidence, although disputed as to the point of William Van Horne’s testimony, supports the trial court’s determination of the boundary.
The distance from the end of the hedgerow to the telephone pole at the edge of the street is approximately 35 feet. The Wards argue, and their exhibits 6, 9, 23, and 25 indicate, that the telephone pole is, as the trial court’s order states, on the same line as the hedgerow. Indeed, Horne does not dispute this. Furthermore, one purpose of the Wards’ complaint was to have the court order Horne to cease from blocking an entrance to the driveway onto the Pearce lot. Kenny Nowell testified that approximately 20 years before the date of the trial he had fertilized the Wards’ land adjacent to the hedgerow for use as a garden. He said that the driveway on the Pearce lot followed the hedgerow and that where the hedgerow stopped the driveway continued to the street. He stated that, at the time of the trial, the area was not overgrown, but that it was adorned by grass and flowers. Jimmy Ward, the plaintiffs’ son, testified that the driveway ran parallel to the hedgerow, continuing on a line to the street (on which line the telephone pole was the end point). Plaintiffs’ exhibits 6, 9, 23, and 25, in all of which the telephone pole can be seen, corroborate his testimony. Jimmy Ward, in referring to plaintiffs’ exhibit 6, also pointed out nearby pine trees that he said he had planted while he was in high school; Jimmy Ward was 47 at the time of trial.
Viewing the evidence in the light most favorable to the Wards, we hold that the challenged portion of the trial court’s order is supported by the evidence.
Based on the foregoing, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and INGRAM, JJ., concur.