The Circuit Court of Crenshaw County ordered a sale of real estate it determined was owned by cotenants, and a division of the proceeds. The Court of Civil Appeals reversed the judgment of the circuit court. Cox v. Walker, [Ms. 2961178, Dec. 5, 1997]739 So.2d 1 (Ala.Civ.App. 1997). We granted certiorari review; we now reverse the judgment of the Court of Civil Appeals.
Pink Cox claimed to be the sole owner of a certain 80-acre tract of land in Crenshaw County. He sued to quiet title to the 80-acres, naming as defendants a large number of his relatives.[1] A relative of these parties, Julius King, had owned this land. It was sold at a tax sale in 1932. Cox, apparently as an heir of King and as a cotenant of this land (along with the defendants or their ancestors), redeemed the land in 1934 by paying $40.00 to Robert R. Folmer, who had purchased it at the tax sale. Cox claimed title either by the simple act of the redemption itself or by adverse possession against his cotenants.
The defendants, claiming to be joint tenants with Cox, counterclaimed, asking for a sale of the property and a division of the proceeds, and an award of attorney fees. The trial court entered a judgment declaring that Cox owned a one-third interest in the property and that the defendants owned the remaining two-thirds interest. The court, finding that the property could not be equitably divided, ordered it sold at a public sale. The court also granted attorneys for all parties a reasonable fee from the proceeds of the sale.
Cox moved for a stay of execution and for a new trial. The trial court stayed the public sale until it held a hearing on the new-trial motion; after the hearing, the *Page 5 
court denied the new-trial motion and set a supersedeas bond amount at $10,000.
Cox appealed. The Court of Civil Appeals reversed and remanded, holding that the evidence showed Cox had adversely possessed the property for more than the 10 years required by Ala. Code 1975, § 6-5-200, and more than the 20-year prescription period. The Court of Civil Appeals concluded that the evidence showed neither the defendants nor those they claimed to be their predecessors in title had paid a proportionate share of the redemption price, with interest, and thus, were not entitled to the benefit of Cox's redemption and thus had no claim as cotenants of Cox. The defendants sought this certiorari review.
The parties presented ore tenus testimony. The trial court's findings of fact based on that ore tenus testimony will be sustained unless they are clearly wrong or manifestly unjust.Hollis v. Post, 487 So.2d 872 (Ala. 1986).
The defendants contend that Cox failed to establish sole ownership of the property by adverse possession. Specifically, they argue, during the years preceding the filing of Cox's action they had no actual knowledge that he was possessing the land on a claim that was adverse to their interests as cotenants.
Redemption from a tax sale by one cotenant inures to the benefit of all cotenants, who, after the redemption, may rehabilitate their cotenancy. See Center Line Enterprises, Inc.v. Washington, 465 So.2d 1129 (Ala. 1985); Coppett v. Monahan,267 Ala. 572, 103 So.2d 169 (1958). In Salter v. Odom, 240 Ala. 462,199 So. 687 (1940), this Court stated the applicable rule regarding rehabilitation of a cotenant's interest:
 "In this jurisdiction it is established by a long line of decisions, that a redemption of property by one cotenant from mortgage, or tax sales, or a purchase before the time of redemption has expired, and the discharge of other liens, will inure to the benefit of all the cotenants, who may, within a reasonable time, elect to avail themselves of the redemption, or of the purchase, by making, or offering to make, their proportionate contribution to the redemption of said property, or its purchase, with interest thereon."
240 Ala. at 464, 199 So. at 687. See also Reed v. Dunn,392 So.2d 1173 (Ala. 1981).
However, the period within which a cotenant must contribute in order to rehabilitate an interest does not commence to run until the cotenant has actual knowledge of the redemption or other acquisition of title. Id. at 1175; See also Draper v. Sewell,263 Ala. 250, 82 So.2d 303 (1955). Therefore, whether Cox was the sole owner depended on whether the cotenants had actual knowledge that Cox had redeemed the land or that he was making an adverse claim to it. From the evidence presented in the trial court, the judge could have found that the cotenants did not have actual knowledge of Cox's redemption or of his adverse claim.
The record contains no evidence indicating that Cox ever indicated by word or act to the cotenants that he had redeemed the property or that he was holding the property adversely to their interests. Cox acknowledged that he did not notify the cotenants, a majority of whom reside out-of-state, that he had an adverse claim to the property:
 "Q. . . . Over the past sixty years have you informed your family it's your property and yours alone?
 "A. No more than just what I told Joe [Cox's son], you know, and then what he was working with Joe, I don't know what he told them [sic].
"Q. Did you tell any of your other family `It's mine'?
 "A. They didn't ask me nothing but they kn[ew] it was mine. I redeemed it from Mr. Folmar for my daddy and he lost it.
". . . . *Page 6 
 "Q. . . . Mr. Pink [Cox], let's make sure we have got this right, now, because you answered my question one way and Mr. Nichols's the other. Did you tell your family other than Joe, did you tell other family that this property was yours?
 "A. I didn't tell them, I sure didn't. Lawyer, I'm not — ain't no need me telling you a lie. I told you the truth. They didn't ask me and [I] didn't tell them nothing. No more than they knowed when Joe was getting it from me they knowed it must have been mine.
". . . .
 "Q. In 1939. Which of those seven [relatives] did you talk to or tell that the property was yours and not theirs?
"A. Did I talk with who?
 "Q. How many of the seven did you talk to and tell that the property was yours and not theirs?
 "A. They was all away from here except my sister, Mattie. All the rest of them was away up north.
"Q. Did you talk to any of them?
"A. Any children in the north?
"Q. Yes.
 "A. No sir. I had one brother in Montgomery but I didn't talk to none of them no more and they just knowed when I redeemed the place.
". . . .
"Q. Did you ever write a letter to them?
 "A. No sir. No more than just through somebody else. I didn't write no letter to them."
(R.T. 20, 24-25, 28-29.)
Cox also contends that the evidence requires a finding that his was an open and notorious possession of the property and put the cotenants on notice that he was possessing it adversely to their interests. He argues that his activities in regard to this land, such as paying taxes, tearing down an old house, and cutting timber, constitute evidence of an ouster of the cotenants. However, the possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of the cotenants; "[n]either do the payment of taxes and lapse of time." Knouff v. Knouff, 485 So.2d 1155, 1156 (Ala. 1986). The cotenants must have "positive information of the facts, however informally communicated or acquired." Ratliff v. Ratliff,234 Ala. 320, 322-23, 175 So. 259, 261 (1937).
In Horne v. Ward, 585 So.2d 877 (Ala. 1991), this Court quoted the following from Tyson v. Jackson, 364 So.2d 1140 (Ala. 1978), "to explain the long-settled law concerning adverse possession as between tenants in common":
 "`The rule has long been established in this jurisdiction that the possession of one tenant in common is presumed to be the possession of all; and such possession does not become adverse to the cotenant until he is actually ousted or [,] short of ouster, the adverse character of the possession of one is actually known to the other, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenant on notice of its adverse character. Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75 (1952); Hames v. Irwin, 253 Ala. 458, 45 So.2d 281 (1949); Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259 (1937).
 "`Before the possession of a cotenant may be regarded as adverse to his cotenant, he must repudiate the cotenant's interest in the property by act or declaration. Livingston v. Livingston, 210 Ala. 420, 98 So. 281 (1923). This means that there must be some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally. Williams v. Sinclair Refining Co., 39 N.M. 388, 47 P.2d 910
(1935); 86 C.J.S. Tenancy in Common § 27. In Ratliff v. Ratliff, . . . this court stated the rule as follows: *Page 7 
 "`. . . The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of cotenants; but there must be positive information of the facts, however informally communicated or acquired. . . .'"
585 So.2d at 878, quoting Tyson, 364 So.2d at 1141-42.
 "The reason for the presumption that possession by one tenant in common is for the benefit of all tenants in common is obvious. One co-tenant should not be favored over another simply because the latter makes no objection to the first co-tenant's possessing and using the land they own in common. If the one using common land intends to deprive his co-tenant of his interest, he should have the burden of bringing his evil intent to the attention of his co-tenant. It is only after actual knowledge of the fact that the possession is hostile and intended to oust the co-tenant and defeat his common interest that the rule of repose begins to run against the co-tenant. One cannot be said to have slept on his rights unless it has been brought to him that his rights have been invaded."
Knouff v. Knouff, 485 So.2d at 1156.
To overcome the presumption that his possession of the property is the possession of all the tenants in common, Cox must show that he actually ousted his cotenants and that the cotenants had actual notice sufficient to apprise them of disseisin. Id.
Having reviewed the record, we conclude that the trial court could have found that Cox's cotenants had not had actual knowledge of Cox's redemption or of Cox's adverse claim, and could have found that the evidence did not establish that Cox committed such acts of adverse possession as to effect an ouster of his cotenants. The court could have found that the evidence did not overcome the presumption that Cox's possession was for the benefit of all the cotenants. The trial court did not err in finding that Cox had not acquired a full interest in the property by adverse possession. The judgment in favor of Cox is reversed, and the case is remanded for proceedings or an order consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Kennedy, Lyons, Brown, and Johnstone, JJ., concur.
See, J., concurs in the result.
[1] Cox named his son Joe as a defendant, but Joe died before trial. Neither an administrator nor an executor was substituted.