BRYAN, Justice.
This case involves two competing claims to a 40-acre tract of land ("the property") and whether the rule of repose may be applied to resolve that dispute. In 1930, Felix Jackson Freeman ("Felix") inherited the property from his father Matt Freeman through Matt's will. Felix married and had 12 children. The record on appeal contains no evidence establishing that Felix conveyed the property during his life. Thus, the record indicates that Felix owned the property when he died in 1961. Felix died intestate, and he was predeceased by his wife and three of his children, only one of whom had a surviving spouse or children. Thus, when Felix died, the property passed by intestate succession to his nine surviving children (each having a one-tenth interest) and to the heirs of one of Felix's predeceased children (who shared the predeceased child's one-tenth interest).
The complications in this case began in 1964, when one of Felix's children, James Freeman ("James"), purported to deed all the property to another child of Felix's, Joseph Freeman ("Joseph"). The 1964 deed was duly recorded. Nothing in the record establishes that, before that deed was executed, James owned more than the one-tenth interest in the property he had inherited from Felix in 1961. The 1964 deed from James to Joseph began a series of conveyances involving various parties over several years. That line of conveyances ended with two deeds in 2004, when DRL, LLC, purported to convey one-half of the surface estate of the property to Thomas W. Hinote and Cindy S. Hinote *966 and one-half of the surface estate of the property to David H. Dowdy and Rebecca L. Dowdy. DRL also purported to convey a portion of the mineral rights in the property to the Hinotes and the Dowdys; DRL retained a portion of the mineral rights for itself. However, for the sake of simplicity, we will describe the competing claims to the property only as they relate to the surface estate, as to which, for purposes of this appeal, the mineral estate is similarly situated.
The various transactions created a situation with two sides laying claim to the property. On the one hand, Felix's descendants claim to own various fractional parts of the property as cotenants. They claim that James never owned more than the one-tenth interest in the property he inherited on Felix's death and, thus, that he could not have conveyed more than that one-tenth interest to Joseph in 1964. They contend that, after the 1964 deed, Joseph owned only a two-tenths interest in the property (the one-tenth interest he inherited on Felix's death plus the one-tenth interest he acquired from James). Under their view, the Hinotes and the Dowdys would also be cotenants, each having actually acquired a one-tenth interest instead of the one-half interest they thought they had acquired. The Hinotes and the Dowdys, on the other hand, each claim to own one-half of the property, tracing their titles back to the 1964 deed in which James purported to deed all the property to Joseph.
In 2011, four of Felix's descendants, Annette Freeman Owens, Willie Freeman, Jr., Eva N. Freeman Jones, and Nona Freeman Farrior, sued the Hinotes and the Dowdys.[1] In pertinent part, the plaintiffs sought a judgment determining the ownership of the property, and they requested a sale of the property for a division of the proceeds. The Hinotes and the Dowdys primarily argued that the plaintiffs' action is barred by the 20-year rule of repose; the plaintiffs dispute that their action is barred by the rule of repose. The Hinotes and the Dowdys alternatively argued that they had acquired the property by adverse possession, contending that they and their predecessors had been in actual, hostile, open, notorious, and exclusive possession of the property for many years.
Following a trial, the trial court entered a judgment in favor of the plaintiffs. The trial court concluded that the plaintiffs owned the property as cotenants, along with the Hinotes, the Dowdys, and dozens of other descendants of Felix. That is, the court determined that the Hinotes and the Dowdys had each acquired a one-tenth interest in the property instead of the one-half interest their respective deeds indicate. The trial court further ordered that the property be sold and the proceeds divided according to the property interest held. The trial court did not discuss the rule of repose in its judgment. The Hinotes and the Dowdys appealed. We affirm.
On appeal, the Hinotes and the Dowdys argue that Alabama's common-law rule of repose bars this action. In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala. 2002), this Court clarified the law concerning the rule of repose. In that case, we explained that the rule of repose bars an action not brought within 20 years from the time the action could *967 have been brought. 825 So.2d at 764. The rule is based solely on the passage of time. Id. This concept is distinct from the accrual of a claim for purposes of a statute of limitations: "[R]epose does not depend on 'accrual,' because the concept of accrual sometimes incorporates other factors, such as notice, knowledge, or discovery." 825 So.2d at 764 n.2. However, in some cases the start of the 20-year period of repose will coincide with the accrual of a claim. Unlike a statute of limitations, which extinguishes the remedy rather than the right, the rule of repose extinguishes both the remedy and the action itself. 825 So.2d at 765. The rule is based on the ideas that " '[i]t is necessary for the peace and security of society' " that disputes should end at some point and that " 'it is inequitable to allow those who have slept upon their rights for a period of 20 years' " to bring an action after memories have faded and parties and witnesses have passed away. 825 So.2d at 763 (quoting Snodgrass v. Snodgrass, 176 Ala. 276, 280, 58 So. 201, 202 (1912) ). " '[T]he only circumstance that will stay the running of the 20 year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim.' " 825 So.2d at 765 (quoting Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982) (emphasis omitted)). That recognition must be express and explicit. 825 So.2d at 765.
The Hinotes and the Dowdys trace their titles to the 1964 deed by which James purported to convey all the property to Joseph. They contend that "[a] claim existed and a right could have been asserted as early as 1964 when James ... purported to convey the full interest-not just his interest-in the [property] to Joseph." The Hinotes and the Dowdys' brief, at 16. Thus, the Hinotes and the Dowdys argue that a 20-year period of repose began to run at that point in 1964. Therefore, they argue, the 20-year period expired long before the plaintiffs filed their action in 2011 and, thus, the action is barred. However, the rule of repose simply does not apply in this case.
Initially, we emphasize the fundamental principle that one cannot convey more property that one owns. Simmons Grp., LTD v. O'Rear, 233 So.3d 335, 339 (Ala. 2017) (stating "the basic property rule that a grantor cannot convey more than the grantor actually owns"). In 1964, James purported to convey all the property to Joseph by deed. However, nothing in the record establishes that, when that deed was executed, James owned more than the one-tenth interest in the property he had inherited in 1961. The record indicates that James was a cotenant of the property with Felix's other heirs. The Hinotes and the Dowdys acknowledge as much in their brief by noting that "one cotenant[, James,] attempted to convey all of the [property]" and that, in the 1964 deed, "James ... purported to convey the full interest-not just his interest-in the [property] to Joseph." The Hinotes and the Dowdys' brief, at 14 and 16 (emphasis in original).
Given that James attempted in the 1964 deed to convey more than he owned and that the Hinotes and the Dowdys claim through that deed, it is evident that the plaintiffs, who claim through intestate succession from Felix, have superior title to the Hinotes and the Dowdys. Once superior title has been established, there is a limited manner by which another party may wrest away that title. In this case, the Hinotes and the Dowdys attempt to use the rule of repose to divest title from the other cotenants; however, the rule may not be used in that way. "The rule of repose has been described as the 'running of the period against claims' rather than a *968 device to displace title. ... [T]he rule of repose cannot be used against one with valid record title by one who clearly does not have title." Oehmig v. Johnson, 638 So.2d 846, 850 (Ala. 1994) (quoting Boshell, 418 So.2d at 92 (emphasis in Boshell omitted)), overruled on other grounds by Ex parte Liberty National, supra. In a case like this, the method of divesting title from other cotenants would be to establish adverse possession.
Knouff v. Knouff, 485 So.2d 1155 (Ala. 1986), illustrates that point. In the proceedings below and on appeal there has been some discussion about whether and how Knouff relates to Ex parte Liberty National, which clarified the law on the rule of repose 16 years after the opinion in Knouff was issued. We take this opportunity to address that issue. Like this case, Knouff involved several heirs who inherited land intestate and thus became cotenants. After taxes were not paid on the land, one of the cotenants, S.S. Knouff, purchased the land at a tax sale. S.S. received a tax deed to the land in his own name. More than 20 years later, certain heirs, claiming they still owned the land as cotenants, sought a sale for division. S.S.'s son and heir, J.R. Knouff, then sought to quiet title to the land. J.R. argued that the rule of repose barred the heirs' attempt to have the trial court order a sale for division. This Court disagreed, concluding that the rule of repose did not bar the action.
The Court first observed that, although S.S. had bought the land at a tax sale and had acquired a tax deed in his own name, his doing so was deemed to be for the benefit of all the cotenants. Thus, the tax deed had not actually given S.S. exclusive ownership of the land. The Court then addressed J.R.'s argument that he and his father S.S. had nevertheless adversely possessed the land since the date of the tax deed. The Court used "repose" language when discussing the adverse-possession claim:
"There is a strong presumption in the law that the possession of one co-tenant is the possession of all, and possession by one tenant in common alone does not repel the presumption. Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197 (1962). Neither do the payment of taxes and lapse of time. ...
"The reason for the presumption that possession by one tenant in common is for the benefit of all tenants in common is obvious. One co-tenant should not be favored over another simply because the latter makes no objection to the first co-tenant's possessing and using the land they own in common. If the one using common land intends to deprive his co-tenant of his interest, he should have the burden of bringing his evil intent to the attention of his co-tenant. It is only after actual knowledge of the fact that the possession is hostile and intended to oust the co-tenant and defeat his common interest that the rule of repose begins to run against the co-tenant. One cannot be said to have slept on his rights unless it has been brought home to him that his rights have been invaded."
Knouff, 485 So.2d at 1156 (emphasis added).
Knouff concerns how one cotenant might wrest title from another cotenant. In that context, the Court used the term "rule of repose" to describe adverse possession. The "rule of repose" discussed in Knouff is not the rule of repose discussed 16 years later in Ex parte Liberty National, which clarified the rule. The rule of repose, as discussed in Ex parte Liberty National, is based solely on the passage of time. However, the "rule of repose" discussed in Knouff is actually adverse possession, which of course involves more elements than the mere passage of time.
*969 Ex parte Liberty National did not discuss Knouff, which is not surprising, given that the cases discuss distinct concepts. The rule of repose discussed in Ex parte Liberty National is "a defensive matter" and "is unlike adverse possession, which affirmatively establishes title." Boshell, 418 So.2d at 92. However, although repose and adverse possession are distinct, they are related and come from the same legal root; thus, it is not surprising that "repose" language will sometimes appear in adverse-possession cases. Both the rule of repose and adverse possession are based on the idea that unasserted rights may be extinguished under certain conditions. With the rule of repose, the only requirement is the passage of time; adverse possession requires the passage of time plus all the other requirements of adverse possession. In short, adverse possession is a rule of repose in that it puts to rest a property claim, but it is not the rule of repose discussed in Ex parte Liberty National. See, e.g., Sparks v. Byrd, 562 So.2d 211, 214 (Ala. 1990) ("In Alabama, the common-law doctrine of adverse possession by prescription acts as a rule of absolute repose ...."); Snow v. Boykin, 432 So.2d 1210, 1212 (Ala. 1983) (stating that the common-law doctrine of adverse possession by "prescription of twenty years is a rule of absolute repose"); and Fitts v. Alexander, 277 Ala. 372, 376, 170 So.2d 808, 811 (1965) (stating that the 20-year prescriptive period for adverse possession "operates as an absolute rule of repose"); see also Herrick v. Moore, 185 Iowa 828, 169 N.W. 741, 742 (1918) ("[A]dverse possession is in the nature of a rule of repose.").
Knouff illustrates that adverse possession is the method of "repose" one cotenant may use to displace title from another cotenant. Ex parte Walker, 739 So.2d 3 (Ala. 1999), further illustrates this point. In Ex parte Walker, one cotenant, Cox, argued that he had acquired all of a tract of land from his other cotenants by adverse possession. The case was a straightforward adverse-possession case concerning cotenants. The Court, in concluding that Cox had not established adverse possession, quoted and relied on Knouff. Specifically, the Court quoted that part of Knouff, also quoted above, concluding that " '[i]t is only after actual knowledge of the fact that the possession is hostile and intended to oust the co-tenant and defeat his common interest that the rule of repose begins to run against the co-tenant.' " Ex parte Walker, 739 So.2d at 7 (quoting Knouff, 485 So.2d at 1156 ). It is evident that the "rule of repose" discussed in Ex parte Walker, like the "rule of repose" discussed in Knouff, is actually adverse possession.
We need not discuss whether the Hinotes and the Dowdys obtained the property by adverse possession because they have not presented and argued that issue.[2] Their appeal rises or falls on their argument that the rule of repose bars the plaintiffs' action. We conclude that the rule of repose is inapplicable in this case and thus does not bar the plaintiffs' action. Accordingly, we affirm the trial court's judgment in favor of the plaintiffs.
AFFIRMED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, and Wise, JJ., concur.
Murdock, J., concurs specially.
Sellers, J., dissents.
MURDOCK, Justice (concurring specially).
I fully agree with the well considered analysis of the main opinion. I write separately to offer a few additional thoughts.
*970 The law begins with this fundamental principle, well explained by the main opinion: One cannot convey better title than one owns. And an application of the rule of repose in the same "space" as this fundamental principle would eviscerate this principle. It would mean that, in fact, a person could be conveyed a better title by his grantor than was held by his grantor so long as no one files an action challenging that conveyance, e.g., a quiet-title action, for 20 years.
Applying a bare, 20-year rule of repose in the manner suggested by the appellants (i.e., merely because a grantee records his deed) would prevent not only the holder under an older, superior chain from defending or suing to vindicate his title once another grantee's deed had been on record for 20 years, but also would prevent the holder under the younger, inferior chain from invoking judicial assistance to defend or vindicate that holder's claim to the land because, typically, the older, superior chain of title also is of record and therefore would have been on record even longer than the challenger's chain. That is, the appellants' approach would mean that when two competing, recorded chains of title are both at least 20 years old, neither side could obtain judicial relief to clarify ownership of land. I suppose self-help would be the only remedy at that point.
Temporal limitations imposed by our law-statutes of limitations and rules of repose-are apposite in civil claims of wrong committed by one party against another. If there is no recovery in such an action because of those limitations, then there is no recovery. So be it.
But disputes over ownership of land are different. The purpose of a quiet-title action is not to allow the law to take the measure of a wrong by one party against another. There is no actionable "wrong" by either party, except for the "cloud" that both parties cast on the title of the other. Moreover, where two parties each lay claim to ownership of the same land, there must be a recovery. Unlike a civil action that measures a claimed wrong by one party against another, the action can not end without a recovery. One of the parties must come away with an award of title to the land. A rule of repose is inapposite.
The main opinion also well states a corollary to the principle that one cannot convey more than he actually owns, namely that the superior chain of title governs the question of land ownership, unless a third party is able to "wrest" that title away from the proper title holder. And to give full vitality to this principle, the law has always required something more to wrest ownership from the rightful owner than a claim under an otherwise invalid conveyance, even if recorded, followed by a period of inaction and waiting. That "more"-that has developed over hundreds of years in our common law (and is now codified in some measure)-are the additional elements of adverse or prescriptive possession, i.e., (i) actual and exclusive possession that is (ii) open, (iii) hostile, (iii) notorious, and (iv) continuous.
The "more" is not the recording of a deed. In fact, the cases where the law has required the challenger to meet the adverse-possession elements under statutory adverse possession (10 years) or common-law prescription (20 years), are not affected by whether the challenger's deed is recorded. Application of the contrary notion would mean (i) that the legal theories of adverse possession and prescription are in large measure rendered unnecessary and (ii) that everyone who receives valid title to land must go to the courthouse and check that title every 20 years for any recordation of a competing deed, else risk losing title to the land to an otherwise stealth owner who takes no other action to *971 put the rightful owner on notice of his adverse claim to the land. That, of course, is not required. See Oehmig v. Johnson, 638 So.2d 846 (Ala. 1994).[3]

The plaintiffs also sued, as necessary parties, many Freeman relatives who allegedly held interests in the property. Concerning the issue on appeal, the interests of those additional defendants are actually aligned with the interests of the plaintiffs. Thus, the additional defendants were listed as appellees in the notice of appeal. However, the additional defendants did not file appellate briefs and have not actively participated in this appeal.

For a summary of the law concerning adverse possession as it relates to cotenants, see Horne v. Ward, 585 So.2d 877, 878 (Ala. 1991).

Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala. 2002) is inapposite. It did not involve challenges to ownership of real property but, instead, involved an action against a life insurer to recover for use of race-distinct mortality rates in industrial insurance policies.